**Anthony F. MAROSCIA,
Plaintiff-Appellant,**

v.

**Edward H. LEVI et al.,
Defendants-Appellees.**

No. 76–2236.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 1977.

Decided Dec. 20, 1977.*

---

* This appeal was originally decided by unreported order on December 20, 1977. *See* Circuit Rule 35. The Court has subsequently decided to issue this order as a per curiam opinion.

Anthony F. Maroscia, pro se.

Thomas G. Wilson, App. Sec., Civ. Div., Dept. of Justice, Washington, D. C., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and SPRECHER, Circuit Judges.

PER CURIAM.

The issue presented in this appeal is whether the district court was correct in finding that the withheld portions of certain Federal Bureau of Investigation (FBI) files and a Central Intelligence Agency (CIA) document were exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

I

On June 9, 1975, plaintiff requested the Director of the FBI to provide him with "all the information available to me concerning my files." After some intervening correspondence, FBI Director Clarence Kelley informed plaintiff on December 12, 1975, that his request had been completed. On February 9, 1975, the FBI released to plaintiff 245 pages of material from six FBI files. Plaintiff was also informed that portions of the released documents had been excised and other documents had been withheld in their entirety pursuant to FOIA exemptions. With respect to a document in the possession of the FBI but which originated with the CIA, the CIA refused to allow disclosure of the document, claiming an exemption under the FOIA.

Plaintiff brought a pro se action under the FOIA on April 12, 1976, seeking access to the documents in the possession of the FBI and CIA which had been withheld. Affidavits were filed detailing the specific exemptions claimed and their relation to the documents in the files. The district court ordered that all the documents (except the classified CIA document and the parts of it contained in the FBI files) be produced in camera for the court's inspection.

The defendants moved on July 15, 1976, for dismissal of the complaint or in the alternative for summary judgment, relying on the filed affidavits. The district court granted summary judgment for defendants, reasoning that the deletions in the FBI files were made properly under the FOIA and that the CIA document was exempt under the FOIA and pursuant to Executive Order 11652. Plaintiff appeals from these determinations and our jurisdiction derives from 28 U.S.C. § 1291.

II

We address first the district court finding that the withheld portions of the FBI files were exempt from public disclosure. The files have been produced for our in camera inspection and they have been reviewed. The portions asserted to be exempt were marked in red. The files relate to various investigations of the FBI concerning plaintiff's possible criminal liability for, among other things, extortion, assaulting a federal officer and committing a crime on a government reservation. The documents include reports from private citizens, FBI employees, law enforcement personnel, and intra-agency correspondence regarding plaintiff's suspected illegal activity.

■ The first group of deletions was based on Exemption 2 of the FOIA, 5 U.S.C. § 552(b)(2), for material "related solely to the internal personnel rules and practices of an agency." The Supreme Court has declared that this exemption relates to "routine matters" with "merely in-

ternal significance" in which "the public could not reasonably be expected to have an interest." *Department of the Air Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). The exemption is claimed here for administrative markings such as file numbers, initials, signature and mail routing stamps, and references to previous communications utilized to maintain control of an investigation. These are matters in which the public interest is minimal and which fall within the ambit of Exemption 2.

■ A second group of deletions was made pursuant to Exemption 7, 5 U.S.C. § 552(b)(7). In particular, the FBI claimed that the reports of interviews and the names of interviewees, third parties, FBI personnel and other law enforcement personnel fell within Exemptions 7(C), (D) and (F), which permit the withholding of

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would
>
> \*    \*    \*    \*    \*    \*
>
> (C) constitute an unwarranted invasion of personal privacy,
>
> (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.
>
> \*    \*    \*    \*    \*    \*
>
> (F) endanger the life or physical safety of law enforcement personnel  .    .    ..

It is beyond question that these files are "investigatory records compiled for law enforcement purposes." With respect to the identities of persons interviewed by FBI personnel and the information received from them, the district court found and we think it clear that this information was acquired under an express assurance of confidentiality or in circumstances where such an assurance may reasonably be inferred. *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131 (4th Cir. 1977). As FBI Agent King declared in his affidavit, these "sources .    .    . were expressly or impliedly assured that the information would be received confidentially," and therefore fall within the scope of Exemption 7(D).

The material referred to above, together with the identities of third parties, FBI employees, and other law enforcement personnel, can also be regarded as exempt as an "unwarranted invasion of personal privacy" under Exemption 7(C) or as likely to "endanger the life or physical safety of law enforcement personnel" under Exemption 7(F). It is proper that such material be withheld in order not only to protect those citizens who voluntarily provide law enforcement agencies with information, but also to insure that such persons remain willing to provide such information in the future. Furthermore, references to third parties may be properly deleted to protect their privacy and to minimize the public exposure or possible harassment of those persons mentioned in the files. Their claim to privacy under Exemption 7(C) outweighs the minimal public interest which would be served by release of their names. *Department of the Air Force v. Rose, supra*, 425 U.S. at 370–76, 96 S.Ct. 1592; *Deering Milliken, Inc. v. Irving, supra*, at 1136. Finally, the identities of FBI and other law enforcement personnel fall clearly within the Exemption 7(F).

Underlying the above conclusions is the realization that plaintiff was being investigated for alleged illegal activities as a part of legitimate law enforcement procedures. Congress intended Exemption 7 to protect the privacy, confidentiality and safety of those involved in proper law enforcement procedures. To release the withheld information would seriously impede these procedures, invade the privacy of numerous private citizens and possibly threaten the safety of those involved. We conclude that these materials were properly exempt from disclosure.

### III

The final document of concern originated with the CIA and parts of it were also

contained in some FBI documents. This document was withheld on the basis of Exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1), which provides for nondisclosure of matters that are

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . .

The district court ruled that this document was properly withheld.

Charles A. Briggs, Chief of the Services Staff of the CIA, filed an affidavit stating that the document was classified "Secret" under the provisions of Executive Order 11652. Classification and Declassification of National Security Information and Material. 37 Fed.Reg. 5209 (March 10, 1972), as amended, 38 Fed.Reg. 10245 (April 26, 1973). Section 1(B) of that Order provides that material should be classified as "Secret" if disclosure "could reasonably be expected to cause serious damage to national security," which might "include disruption of foreign relations significantly affecting the national security; significant impairment of a program or policy directly related to the national security; revelation of significant military plans or intelligence operations; and compromise of significant scientific or technological developments relating to national security."

Mr. Briggs contended that the document was properly classified since it revealed details of a clandestine operation against a named foreign country and identified a foreign intelligence source. The document is described as a one-page memorandum to the director of the FBI. Each of the textual paragraphs is described in some detail, indicating the circumstances and the sensitivity of the information. The potential harm resulting from disclosure of this document, according to Mr. Briggs, includes

(1) a serious diplomatic reprisal by the foreign government involved, (2) the loss of a successful functioning intelligence collection operation which has produced vital intelligence responsive to U.S. national security needs, and (3) the exposure of a clandestine agent source, who has reported information concerning a foreign government to the United States. The source would be faced with severe penalties.

We are convinced that this CIA document has been properly withheld according to Executive Order 11652 and, although the document was not produced for *in camera* inspection, we conclude that it was properly classified. *In camera* inspection is not always required and the affidavit of Mr. Briggs persuades us that the claim is not unreasonable. Our responsibility is not "to test the expertise of the agency, or to question its veracity where nothing appears to raise the issue of good faith." *Weissman v. Central Intelligence Agency*, 565 F.2d 692 at 697 (D.C.Cir. 1977), rehearing denied April 4, 1977. *Accord, Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4th Cir.), cert. denied, 421 U.S. 992, 95 S.Ct. 2669, 45 L.Ed.2d 702 (1975). We, therefore, conclude that the CIA document and the parts of it utilized in various FBI documents were not subject to disclosure.

Accordingly, for the reasons discussed above, the decision of the district court in approving the withholding of the matters disputed in this case is

AFFIRMED.