David **MILLER**, Plaintiff,

v.

William H. **WEBSTER**, Griffin Bell, Federal Bureau of Investigation, and United States Department of Justice, Defendants.

No. 77 C 3331.

United States District Court, N. D. Illinois, E. D.

Jan. 30, 1979.

Subsequent Opinion March 2, 1979.

On Motion for Attorney's Fees Jan. 21, 1980.

Lance Haddix, Robert M. Hodge, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., James T. Hynes, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff brought this action against the Department of Justice and the Federal Bureau of Investigation (FBI) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking production of documents in the possession of the FBI and the United States Attorney for the Northern District of Illinois. Jurisdiction is predicated upon 28 U.S.C. § 1361. After requesting documents relating to an alleged wiretap on his telephone, plaintiff received some documents and portions of documents from the FBI. Not satisfied with the extent of the FBI's disclosure, plaintiff brought this suit seeking production of the withheld portions of the FBI documents and any documents concerning him in the possession of the United States Attorney's office. Plaintiff also subsequently amended his complaint to seek further indexing and itemization by the FBI. We granted plaintiff's motion for further indexing. Because of the FBI's alleged refusal to justify its withholding of information, and because of the delay involved in producing indexing, plaintiff has now sought sanctions against defendants. Several motions are now pending: plaintiff's and defendants' motions for summary judgment, defendants' motion to dismiss, defendants' motion for reconsideration of our order granting further indexing, and plaintiff's motion for sanctions.

### Facts

On February 8, 1973, plaintiff, a former research scientist with Argonne National Laboratories, complained to the Chicago office of the FBI about a possible wiretap on his telephone. The FBI investigated plaintiff's complaint, and in January, 1974, the United States Attorney's office for the Northern District of Illinois declined prosecution. Because plaintiff's only further recourse was a civil action, and because plaintiff believed that the FBI's investigation had been inadequate, plaintiff sought to

learn more about the investigation through a FOIA request. Plaintiff made several requests for documents relating to a possible wiretap on his telephone and the FBI's investigation, including requests to James Thompson, then United States Attorney for the Northern District of Illinois, and the Department of Justice. After extended correspondence between plaintiff and the Department of Justice, the FBI on October 22, 1976 released some documents to plaintiff, with deletions of information allegedly exempt under exemptions (b)(2), (b)(7)(C) and (b)(7)(D) of the FOIA. Additional documents were released to plaintiff on February 23, 1977. After exhausting his administrative remedies, plaintiff brought this action on September 7, 1977.

On September 21, 1977, we ordered defendants to provide an index and justification for the material withheld from the twelve documents released to plaintiff. On November 4, 1977, defendants filed an index which purported to justify the withheld information on the basis of exemptions in the FOIA. On January 16, 1978 plaintiff moved for summary judgment as to the withheld portions of the documents. Defendants filed a cross motion for summary judgment. Alternatively, defendants moved to dismiss plaintiff's complaint as to the FBI, Director Kelley, and Attorney General Bell on the grounds that they are not proper parties to the action. Not satisfied with the index supplied by the defendants, plaintiff moved for sanctions against defendants for failure to fully comply with our order to provide an index. We denied this motion without prejudice on February 6, 1978. On June 2, 1978, plaintiff moved for further indexing, justification, and itemization, alleging that the FBI had not searched all possible sources of documents. We granted this motion on June 30, 1978 and ordered the government to comply within forty-five days. The government instead moved on July 25 for reconsideration of our order granting further indexing. The plaintiff then renewed his earlier motion for sanctions.

*Defendants' Motion to Dismiss*

Defendants assert that the FBI, William H. Webster,[1] and Attorney General Griffin Bell are not proper parties to this action because they are not "agencies" to which a request for documents can be directed within the meaning of the FOIA. *See* 5 U.S.C. § 552. The legislative history to the 1974 amendments to the FOIA clearly indicates that the FBI is such an agency for FOIA purposes. According to the legislative history, Congress intended the FOIA to apply to criminal law enforcement authorities, and the FBI is such an authority. House Rep. No. 93–876, 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6291–92. *See Hamlin v. Kelley*, 433 F.Supp. 180, 181 (N.D.Ill.1977). Defendants' motion to dismiss the FBI is denied. Similarly, Attorney General Bell and Director Webster, who are sued in their official capacities as custodians of the documents, are proper parties. They are responsible for the administration of the FOIA within the Department of Justice and the FBI and would act on any order by this court directing the FBI to produce the withheld information. *See id.* Defendants' motion to dismiss Attorney General Bell and Director Webster is denied.

*Plaintiff's and Defendants' Motions for Summary Judgment*

The purpose of the FOIA is to allow access to official information, which often has been unjustifiably withheld from public scrutiny. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Thus an agency must release information in its possession unless the information falls within one of the Act's nine statutory exemptions contained in 5 U.S.C. § 552(b). To insure that the Act's policies favoring disclosure are served, the nine exemptions are to be narrowly construed. *Theriault v. United*

---

1. William H. Webster, current director of the FBI, is automatically substituted for former director Clarence Kelley. F.R.Civ.P. 25(d)(1).

*States,* 395 F.Supp. 637, 641 (C.D.Calif. 1975); *B & C Tire Co. v. IRS,* 376 F.Supp. 708 (N.D.Ala.1974). Moreover, the statute provides that the district court must make a *de novo* review of the administrative decision and the burden is on the agency to justify its action in withholding documents. 5 U.S.C. § 552(a)(4)(B).

Defendants have relied on several exemptions to justify withholding portions of the requested documents.[2] Defendants relied on exemption (b)(7)(C) to delete the names of FBI agents, individuals questioned during the investigation of plaintiff's wiretap complaint, information which would tend to identify those individuals, and information concerning two United States Senators and one Congressman. Exemption (b)(7)(C) exempts investigatory records compiled for law enforcement purposes to the extent that disclosure would constitute an unwarranted invasion of personal privacy. To hold that information is exempt from disclosure under (b)(7)(C), we must find that the records were compiled for law enforcement purposes, that personal privacy interests attach to the withheld information, and that disclosure would constitute an unwarranted invasion of those privacy interests.

The information withheld here clearly consists of records compiled for law enforcement purposes. If a privacy interest is implicated, then we would adopt the test the Supreme Court formulated with respect to exemption (b)(6) in *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Exemption (b)(6) is similar to exemption (b)(7)(C) in that (b)(6) exempts information from personnel files, the disclosure of which would constitute a "clearly unwarranted invasion of personal privacy."[3] The Court in *Rose* indicated that the exemption requires "a balancing of the individual's right to privacy against the

preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.' " *Id.* at 372, 96 S.Ct. at 1604.

FBI agents do have a privacy interest in the potential disclosure of their names in connection with a FOIA request regarding a particular investigation. A government employee does not completely lose his personal privacy with respect to the discharge of his official duties. *Nix v. United States,* 572 F.2d 998, 1005–06 (4th Cir. 1978). Identification possibly could subject the agents to "harassment and annoyance in the conduct of their official duties and in their private lives." *Id. See also Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977); *Flower v. FBI,* 448 F.Supp. 567, 571 (W.D. Tex.1978). The defendants also assert that disclosure of agents' names could jeopardize future undercover assignments. *See* King affidavit.

Balanced against the privacy interests is the public interest in the investigation and disclosure of possible violations of federal statutes. With complete disclosure, plaintiff would be able to determine whether the FBI's investigation of the alleged wiretap was complete and adequate. Moreover, although the Act was not designed to benefit private litigants, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975), the public interest in preventing and discovering illegal wiretaps may be vindicated in some cases only by a private litigant's resort to a civil action under 18 U.S.C. § 2520. Just as the vindication of constitutional rights by private litigants in § 1983 actions serves the public interest, the vindication of important statutory rights such as those embodied in 18 U.S.C. § 2520 also serve the public interest. Thus if plaintiff needs the names of

2. When plaintiff filed his suit, the FBI had deleted information from all twelve documents pursuant to exemption (b)(2), which exempts material related solely to an agency's internal personnel rules and practices. 5 U.S.C. § 552(b)(2). Because defendants have since agreed to disclose this information, the question of whether defendants' claim for exemption is correct is moot.

3. Privacy interests are afforded more protection by (b)(7)(C) than by (b)(6) inasmuch as (b)(6) requires disclosure unless the invasion of privacy interests would be "clearly" unwarranted.

the FBI agents to maintain a suit under § 2520, then the release of the names would benefit a public interest. We must emphasize that plaintiff could not tip the balance in his favor by pointing to his personal interest in a thorough investigation of a wiretap on his phone, an interest which is admittedly greater than the public's interest in such an investigation. We merely note here that the public interest in such an investigation coincides to a certain extent with plaintiff's own interest.

In balancing the privacy interests of the FBI agents with the public interest in disclosure, we must not perform the balancing act in a vacuum. Instead of weighing the potential dangers to FBI agents or the possible benefits to the public interest in the abstract, we must consider these dangers or benefits in the context of the facts of this particular case. This is not a case in which the plaintiff seeking disclosure of names of agents has been investigated for possible criminal violations. *See Maroscia v. Levi, supra* at 1002. Accordingly, we perceive no possible danger to the agents resulting from disclosure of their names to plaintiff, nor have defendants hypothesized any such danger. Thus we are left with an abstract potential for harassment and annoyance and the possibility that future undercover investigations could be jeopardized as justifications for the deletion of the agents' names. These potential invasions of privacy would exist in every case involving disclosure of agents' names, and the government has not indicated any reason for speculating that the potential is greater in this case.

█ The exemptions to disclosure are to be narrowly construed, and Congress amended exemption (b)(7) in 1974 because of the broad application courts were giving it. *Charlotte-Mecklenburg Hospital Authority v. Perry*, 571 F.2d 195 (4th Cir. 1978). Thus once we have found a public interest in disclosure, and the government has not pointed to any circumstance peculiar to this case which indicates greater

potential for harassment, annoyance, or the compromising of undercover assignments than would be present in every case, we shall resolve the balancing test in favor of disclosure. *Cf. Nix v. United States, supra* at 1006 (no public interest found); *Flower v. FBI, supra* at 571; *Tarnapol v. FBI*, 442 F.Supp. 5, 8 (D.D.C.1977). In weighing the public interest in disclosure against the privacy interests, we conclude that the government has not satisfied its burden and that disclosure here will not constitute an "unwarranted" invasion of personal privacy. Defendants must release the names of FBI agents withheld from documents 2, 4, 8, 9, and 11.

█ We have come to a similar conclusion with respect to the names of those persons interviewed by the FBI in connection with the investigation of the alleged wiretap on plaintiff's phone. In balancing the public interest in disclosure, which is identical to the interest in release of the FBI agents' names, against the privacy interests of the individual interviewees, we conclude that release will not constitute an unwarranted invasion of personal privacy. This is not a case in which release of names of individuals is tantamount to a statement about private or illegal activities of those individuals. *See Ferguson v. Kelley*, 448 F.Supp. 919 (N.D.Ill.1977). Nor was this plaintiff who seeks disclosure the subject of a criminal investigation. *See Maroscia v. Levi, supra.* Moreover, we question whether the individuals whose names were deleted were given any representations of confidentiality which would allow them to have any expectation of privacy or which would have induced them to give information to the agent. *See* Triphan affidavit. This is especially true inasmuch as certain of the persons interviewed by the FBI concerning events that they have witnessed might actually believe that they would be required to testify at a later time. Thus exemption (b)(7) is not available to defendants as a justification for withholding names of interviewees.[4]

---

4. Defendants have relied on both exemption (b)(7)(C) and (b)(7)(D) to justify withholding

some names of interviewees contained in document 8, but inexplicably relied only on

■ The final question relevant to exemption (b)(7)(C) is whether material excised from letters written by then Director Kelley to Senators Percy and Stevenson, and to Congressman Erlenborn (documents 5, 6, and 7) is exempt under (b)(7)(C). Although defendants claim that the material is "personal in nature," *see* King affidavit, this statement is not sufficient for us to find that release would be· unwarranted. Defendants' affidavit does no more than assert that the material is exempt. Defendants have not carried their burden with respect to these statements, and therefore defendants shall submit to the court for *in camera* inspection, within fifteen days, the complete text of Director Kelley's letters to Senators Percy and Stevenson, and to Congressman Erlenborn, dated February 25, 1974.

■ Defendants have also relied on exemption (b)(7)(D) to withhold names of those interviewed by the FBI. Exemption (b)(7)(D) exempts material compiled for law enforcement purposes to the extent that production would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source." Exemption (b)(7)(D) is unavailable to an agency unless the source of information was given an express assurance of confidentiality or could reasonably infer an assurance from the circumstances. *See* House Rep. No. 93–876, 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6291; *Maroscia v. Levi, supra* at 1002. Defendants do not claim that the FBI made an express promise of confidentiality. They do claim that persons interviewed "often assume" that their identities will not be disclosed. King affidavit at 11. Thus defendants admit, and we agree, that not all persons

interviewed by FBI agents assume that· their names will be kept confidential. Defendants have not shown that the interviewees in the circumstances of this case could have reasonably assumed or did assume confidentiality. On the contrary, plaintiff has submitted an affidavit from one such interviewee who stated that the FBI agent made no representations of confidentiality nor did the affiant infer any. Triphan affidavit. Moreover, defendants have not shown that this is a case in which the interviewee might have a· reason for desiring confidentiality. *See, e. g., Wellman Indus. Inc. v. NLRB,* 490 F.2d 427, 431 (4th Cir. 1973); *cert. denied* 419 U.S. 834, 95 S.Ct. 61, 43 L.Ed.2d 61 (1974). Defendants have not satisfied their burden of proof with respect to (b)(7)(D), and the FBI must release the names excised pursuant to (b)(7)(D) from documents 1, 2, 4, and 8.

Plaintiff has also sought release of information pursuant to the Privacy Act, 5 U.S.C. § 552a. We have afforded plaintiff substantially all of the relief he has requested with respect to documents the FBI found in their initial search responding to plaintiff's request.[5] The information from letters to Senators Percy and Stevenson and to Congressman Erlenborn do not pertain to plaintiff and so are prohibited from disclosure under the Privacy Act unless we determine upon *in camera* inspection that the FOIA requires disclosure. *See* 5 U.S.C. § 552a(b)(1). Thus we need not reach plaintiff's Privacy Act claim with respect to FBI documents. Plaintiff has also submitted a Privacy Act request for information pertaining to him in the possession of the United States Attorney for the Northern District of Illinois. An Assistant United States Attorney stated in an affidavit that in a search for records pertaining to plaintiff, he found one index card relating to plaintiff's wiretap complaint. · *See* Hynes affidavit.

(b)(7)(D) to justify withholding other names from document 8 as well as names from documents 1, 2, and 4. We can perceive no reason in the nature of the excised or released portions of the documents for this inconsistency. Our later discussion of exemption (b)(7)(D), however, will demonstrate that a similar inconsistency will not exist with respect to our rulings.

5. Additional documents may be revealed upon further indexing, but we need not consider whether these must be released under the FOIA or the Privacy Act at this time.

Although the Assistant United States Attorney stated that he believed that the plaintiff did not want this document, this belief was apparently mistaken. Defendants should release this document to plaintiff.

Defendants' motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted except as to the material excised from the letters to Senators Percy and Stevenson and Congressman Erlenborn. We will defer determination of the motion for summary judgment as to the material from these letters pending our *in camera* inspection.

### *Motion for Reconsideration of Order of Further Indexing*

On June 2, 1978, plaintiff moved for further indexing and itemization of FBI files. Plaintiff based his request upon his belief that the FBI had not checked all of the possible sources of information concerning a wiretap of plaintiff's telephone. On June 30, 1978, we granted plaintiff's motion. The defendants' motion for reconsideration of our ruling is now pending.

The government argues that the plaintiff is not entitled to further indexing because such further indexing would impose an unreasonable burden upon the FBI, a burden which was not contemplated by the drafters of the FOIA. Secondly, the government argues that the plaintiff's request for further indexing is beyond the scope of the plaintiff's original request. According to the defendants, plaintiff's original request sought only those documents related to the investigation of his wiretap complaint, all of which have been disclosed. Thus defendants argue that plaintiff is not entitled to any additional documents because he did not exhaust his administrative remedies with respect to such documents.

. At the outset we note that the fact that response to the request for further indexing would be time-consuming or burdensome is not a defense. *Ferguson v. Kelley*, 455 F.Supp. 324 (N.D.Ill.1978); *Willford v. Hardin*, 315 F.Supp. 175 (D.Md.1970), aff'd, 444 F.2d 21 (4th Cir. 1971). If the broad policy of disclosure is to be served, the government cannot base a refusal to search on the difficulty of the search. Once we have determined that the plaintiff reasonably described the records that he seeks, and that a search by the FBI may reveal some documents within the scope of the plaintiff's request, further indexing and itemization is appropriate.

Plaintiff's original request can be reasonably construed as a request for documents relating to a wiretap on his telephone and not simply as a request for documents relating to the investigation of his wiretap complaint. This construction of plaintiff's request is especially appropriate inasmuch as plaintiff could reasonably assume that an investigation of his wiretap complaint would include a search for any documents relating to a wiretap of his telephone. Thus plaintiff's request for further indexing is within the scope of his original request.

Plaintiff's motion for further indexing detailed seven indices that plaintiff alleges were not searched pursuant to his original request. Five of these seven contain documents which are retrievable through a search of the FBI's Central Records system. The investigative file relating to plaintiff's wiretap complaint was retrieved through a search of the Central Records system. Defendants claim that even if we order further indexing they need not search any indices containing documents retrievable through the Central Records system, because such documents would have been retrieved by their initial search. *See* second King affidavit. Plaintiff contends, however, that the government searched the Central Records system only for the investigative file on plaintiff's wiretap complaint, and thus other indices which are contained in the Central Records system and which may contain documents related to a wiretap of plaintiff's telephone were not searched.

We hold that our original ruling of June 30 was correct, and that plaintiff is entitled to further indexing. We cannot determine, however, whether the defendants searched

the Central Records system only for plaintiff's investigative file or whether a complete search of the Central Records system turned up only that file. Therefore, if the defendants did not restrict their search to the investigative file but made a general search of the Central Records system, they need only search those two indices which plaintiff included in this motion that are not contained in the Central Records system, the electronic surveillance indices records system and the records of the FBI's Chicago field office. If, however, defendants searched the Central Records system only to the extent of finding the investigative file on the wiretap complaint, the defendants must conduct another search of the Central Records system to find any information relating to a wiretap on plaintiff's telephone. Defendants' motion to reconsider the order of June 30, 1978 requiring further indexing is denied.

### Motion for Sanctions

On January 27, 1978, the plaintiff, dissatisfied with the government's compliance with our order for indexing, submitted a motion for sanctions. We denied this motion without prejudice on February 6, 1978. Plaintiff has now renewed his motion for sanctions.

A district court deciding a FOIA case may trigger an investigation by the Civil Service Commission to determine whether disciplinary action is warranted against the officer responsible for withholding documents. 5 U.S.C. § 552(a)(4)(F). To trigger such an investigation, however, we must make a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding." *Id.*

 We decline to issue such a finding here. Although the government has not complied speedily with plaintiff's requests, we are mindful of the backlog of FOIA cases that the FBI faces. Moreover, even though we have ordered defendants to search additional indices, the scope of the government's original search was not un-reasonable given the unique nature of the plaintiff's request. Finally, the circumstances surrounding the plaintiff's request for material concerning plaintiff in the possession of the United States Attorney's office do not indicate arbitrary and capricious behavior. Plaintiff's motion for sanctions is denied.

### Motion for Attorney's Fees

Section 552(a)(4)(E) allows the court to assess attorney's fees and costs against the United States. Because we have granted plaintiff's motion for further indexing, we will defer a determination of whether plaintiff is entitled to fees until we have completely determined what documents the plaintiff must receive.

Defendants' motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is granted except as to the letters to Senators Percy and Stevenson and to Congressman Erlenborn which are to be submitted to the court for *in camera* inspection. Defendants will turn over to plaintiff within fifteen days all excised information except for the material from the Percy, Stevenson, and Erlenborn letters which will be submitted to the court within fifteen days. Defendants' motion for reconsideration of the order of June 30, 1978 for further indexing is denied. Plaintiff's motion for sanctions is denied. Ruling on plaintiff's motion for attorney's fees is deferred.

### SUBSEQUENT OPINION

In this Freedom of Information Act (FOIA) case, plaintiff has sought documents in the possession of the FBI relating to an investigation of a possible wiretap on plaintiff's telephone. In our memorandum decision of January 30, 1979, we granted plaintiff's motion for summary judgment as to most of the deletions from documents which had already been indexed by the FBI. We deferred our decision on plaintiff's motion as to material deleted from letters from then director Kelley to Senators Stevenson and Percy and Congressman Erlenborn. Because we determined that the

government's affidavit did not satisfy their burden of convincing us as to the propriety of deleting material from these letters, we ordered the complete text of the letters produced for *in camera* inspection. The government has now produced these letters, and we now proceed to decide plaintiff's and defendants' motions for summary judgment as to the deleted portions of the letters.

The deleted material consists of one sentence in each letter. The defendants contend that the deleted material is exempt under 5 U.S.C. § 552(b)(7)(C), which exempts material compiled for law enforcement purposes to the extent that release would constitute an unwarranted invasion of personal privacy. After reading the material excised from these three letters, we cannot fathom how release of this material would constitute any invasion of privacy, let alone an unwarranted one.[1] Therefore, plaintiff's motion for summary judgment is granted as to the material deleted from the three letters. Defendants are ordered to release complete texts of all three letters to plaintiff within fifteen days.

## ON MOTION FOR ATTORNEY'S FEES

We have pending plaintiff's motion for attorney's fees in this Freedom of Information Act (FOIA) case. Plaintiff sought disclosure of documents in the possession of the Federal Bureau of Investigation (FBI) and of the United States Attorney for the Northern District of Illinois. On January 30, 1979, we granted plaintiff's motion for summary judgment as to some documents, deferred ruling on the summary judgment motion as to others, ordered the FBI to conduct further indexing, and deferred ruling on plaintiff's motion for attorney's fees. Plaintiff has renewed his motion for attorney's fees.

Plaintiff's complaint stems from an incident which led him to believe that his telephone had been wiretapped. Plaintiff reported his suspicions to the Chicago office of the FBI. After an investigation, the

United States Attorney's office for the Northern District of Illinois informed plaintiff that it declined prosecution. Plaintiff then made a FOIA request to learn more about the FBI's investigation and to determine whether a civil action was available. After extended correspondence between plaintiff and the Department of Justice, the FBI on October 22, 1976 released some documents to plaintiff, with deletions of information allegedly exempt under exemptions (b)(2), (b)(7)(C), and (b)(7)(D) of the FOIA. Additional documents were released to plaintiff on February 23, 1977. After exhausting his administrative remedies, plaintiff brought this action on September 7, 1977.

As we view the procedural posture of this case, the only aspect remaining for us to consider is the motion for attorney's fees. After we ordered defendants to provide an index and justification of withheld material, and defendants did so, plaintiff moved for summary judgment as to the withheld portions of the documents. Plaintiff also moved for sanctions, contending that defendants' index was not in full compliance with our order. Plaintiff then moved for further indexing, alleging that the FBI had not searched all possible sources. We granted the motion for further indexing, and defendants moved for reconsideration.

Thus, in our January 30, 1979 decision we ruled on plaintiff's and defendants' cross motions for summary judgment, plaintiff's motion for sanctions, and defendants' motion for reconsideration of our order for further indexing. As for the motions for summary judgment, we denied the defendants' motion, and granted in part and deferred in part plaintiff's motion. We granted plaintiff's motion as to deletions pursuant to the FOIA, consisting of the names of FBI agents, the names of persons interviewed in connection with the wiretap investigation, and information which would identify the agents and interviewees. We deferred, pending *in camera* inspection, ruling on plaintiff's motion as to three letters,

---

1. Defendants have appealed from our order of January 30. Anticipating a similar fate for this order we shall not publicly disclose the three sentences in question at this time.

each of which had had one sentence deleted pursuant to exemption (b)(7)(C).[1] Plaintiff had also requested documents pursuant to the Privacy Act, 5 U.S.C. § 552a. We held that our ruling under the FOIA had afforded plaintiff complete relief with respect to FBI documents so that no FBI documents remained for consideration under the Privacy Act, with the possible exception of documents which might be revealed upon further indexing. Plaintiff's complaint does not indicate that any FBI documents requested under the Privacy Act were not also requested under the FOIA. With respect to documents in the possession of the United States Attorney's office, we ordered the release of the one document revealed by defendants' search of the documents in the office. Thus, other than issues arising in connection with the further indexing, no issue of production of documents under the Privacy Act remains.

As for the motions for further indexing, we again ordered defendants to conduct additional searches and indexing of FBI records. Defendants have now done so, and in an affidavit dated April 12, 1979, and filed May 24, 1979, Special Agent King discussed the procedure and results of the additional search. King states that the FBI has released to plaintiff the documents, with deletions pursuant to exemptions in the FOIA, that were revealed upon further indexing and that were not already released to plaintiff. Fourth King affidavit. Plaintiff has not objected to the conduct or the results of the additional indexing. Accordingly, we conclude that plaintiff is satisfied with defendants' compliance with the order for further indexing. Therefore, although plaintiff represented to us at the status hearings in March that we still had several issues to resolve, all such issues were resolved either in the memorandum decision of January 30, 1979 or upon further indexing by defendants. Only the issue of attorney's fees remains.[2]

A FOIA plaintiff who substantially prevails is entitled to attorney's fees. 5 U.S.C. § 552(a)(4)(E). Our decision awarded plaintiff substantially all of the relief that he requested. We ultimately ordered the FBI to release all of the material deleted from the documents originally given to plaintiff. We ordered further indexing, as plaintiff requested, and the indexing turned up additional documents. Thus plaintiff has substantially prevailed.[3]

Even if the plaintiff substantially prevails, however, we still have the discretion to deny a motion for fees. Defendants, in their opposition to plaintiff's motion, point to four criteria which should guide the exercise of our discretion in determining the appropriateness of a fee award. These criteria, which are set out in the Senate Report on the 1974 amendments to the FOIA are: (1) the benefit to the public derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records; and (4) whether the withholding had a reasonable basis in law. See S.Rep. No. 93–854, 93rd Cong., 2d Sess. 17 (1974). The conference report on the 1974 amendments deleted these four criteria, but only because the conferees concluded that existing law on

1. After our inspection, we ordered the release of the complete texts of the three letters.

2. Count II of plaintiff's complaint seeks disclosure of information concerning all FOIA suits filed against then FBI Director Clarence Kelley. Count II was not at issue in our memorandum opinion. The FBI informed plaintiff after his complaint was filed that copies of 7,000 pages of documents from 200 lawsuits would be sent to plaintiff upon the FBI's receipt of $180 in duplicating costs. The parties informed us at the status hearing that plaintiff had filed a request for a waiver of duplicating fees, which the Justice Department apparently never received. The parties indicated that the request would be resubmitted and that presumably a denial would lead to a motion before us by plaintiff for a waiver of fees. We have seen no such motion, and we presume that this issue has been resolved.

3. Although we cannot determine the extent to which plaintiff prevailed on Count II, dealing with FBI documents relating to FOIA lawsuits filed against Clarence Kelley, defendants cannot be considered the prevailing party on this count. Moreover, the documents at issue in Count I were clearly the most important to plaintiff and commanded the vast majority of time spent by the parties and by the court on this case.

attorney's fees embodied the criteria. Conf.Rep. 93–1200, 93rd Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 6285, 6288. Courts have cited the four criteria with approval. *See, e. g. Pope v. United States,* 459 F.Supp. 426, 429 (S.D. Tex.1977), *aff'd* 585 F.2d 502 (5th Cir.1978), *AFGE v. Rosen,* 418 F.Supp. 205, 207 (N.D. Ill.1976). Before applying these criteria, we must emphasize that all four are relevant. Thus even if we conclude, for example, that the public interest was not benefitted by the case, we must consider the other three criteria to determine whether the balance nevertheless weighs in favor of awarding attorney's fees to the plaintiff. *See Blue v. Bureau of Prisons,* 570 F.2d 529 (5th Cir. 1978) (district court abused discretion in considering only benefit to public).

Applying these criteria here, we must disagree with defendants' assertion that the balance of the four standards tips in favor of defendants. As for the benefit to the public from the release of documents, we concluded in our memorandum decision that a plaintiff vindicated a public interest by attempting to prevent and discover illegal wiretaps through an action under 18 U.S.C. § 2520. In this case, plaintiff needed the withheld information to bring such an action. A finding of this public interest was a prerequisite to our holding that release of some of the deleted portions of the documents would not constitute an unwarranted invasion of personal privacy so as to render the information exempt from disclosure under (b)(7)(C). We believe that the public interest which will support release of the withheld material will also support an award of attorney's fees. We must note, however, as we did in our earlier memorandum decision, that plaintiff's interest in the information exceeds any interest to be derived by the public. This disparity will impact on our discretion in assessing the amount of fees.

The second criteria is the commercial benefit to the plaintiff. Such benefit is relevant because if it exists it renders unnecessary the attorney's fee provision's purpose of overcoming FOIA plaintiffs' reluctance to pay litigation costs in order to vindicate their legitimate rights. *See Cuneo v. Rumsfeld,* 180 U.S.App.D.C. 184, 553 F.2d 1360 (D.C. Cir. 1977). As we have noted, plaintiff has a personal interest in the documents, but this interest is a commercial one only to the extent of a possible damage award in a civil action for illegal wiretapping pursuant to 18 U.S.C. § 2520. But his commercial interest must be deemed secondary to plaintiff's interest in learning more about a possible wiretap on his phone. Moreover, the prospect of a damage award under § 2520 would not be a sufficient inducement for any plaintiff to shoulder the burden of attorney's fees and costs.[4] Plaintiff does have a slight commercial benefit, which we will not ignore in assessing fees. *See MCA, Inc. v. IRS,* 434 F.Supp. 212 (C.D.Cal.1977).

The third factor is the nature of the complainant's interest in the withheld documents. The Senate Report notes that a court would award fees under this criterion "if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature." S.Rep. No. 93–584, 93rd Cong., 2d Sess. 19 (1974). As we have noted plaintiff's interest in the documents is to some extent public-interest oriented. Moreover, because his interest cannot be characterized as frivolous or purely commercial, the third criterion favors plaintiff.

The final criterion is whether the government's withholding of the records sought had a reasonable basis in law. For most of the withholdings here, the government had precedential authority for the exemptions claimed. But the existence of a reasonable basis does not preclude an award of fees. *Cuneo v. Rumsfeld, supra,* 180 U.S.App.D.C. at 190, 553 F.2d at 1366. Moreover, although the defendants in general may have a reasonable basis for withholding the type

---

**4.** Section 2520 provides for damages in the amount of $100 for each day of the illegal wiretap or $1,000, whichever is higher. *See* 18 U.S.C. § 2520.

of information deleted here, we found that in this particular case none of the general concerns justifying an application of the exemptions existed. Nevertheless, we cannot say that the government's position was unreasonable.

▮ We hold that the balance tips slightly in favor of plaintiff on the first three criteria and slightly in favor of defendants on the last. Plaintiff is therefore entitled to fees. We also hold, however, that given the delicate balancing required to come to this conclusion, the multiplier sought by plaintiff is not appropriate here. Although plaintiff did vindicate a public interest, the action was brought predominantly for his personal benefit. Therefore plaintiff is entitled to fees at the prevailing market rate for the number of hours expended.

Although the number of hours contained in Mr. Haddix's affidavit is a reasonable figure for an action of this type, we do not yet have enough information to assess fees. Mr. Haddix states that his associate, Mr. Hodge, spent time on the case but did not file a petition for fees. Instead, Mr. Haddix prorated Mr. Hodge's time and incorporated it into the Haddix affidavit. We cannot determine the proper hourly rate for each hour in the fee petition unless we know how many hours were spent on the case by each attorney, inasmuch as the two attorneys are likely to have different billing rates. Moreover, we cannot determine the proper hourly rate for Mr. Hodge's time unless we know the extent and nature of his experience.[5] Mr. Hodge is directed to submit in open court within 14 days an affidavit indicating his background and experience and how many of the 76.5 hours listed in the original fee petition he expended on the case. When we have this affidavit, we will determine the proper hourly rate for both attorneys and we will enter a final judgment awarding fees.

5. Mr. Haddix may have taken the difference in experience and hourly rates into account by "prorating" Mr. Hodge's time. Nevertheless,

the court, and not Mr. Haddix, should determine the appropriate hourly rate for Mr. Hodge.