Arnold ABRAMS, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, United States Department of Justice and Central Intelligence Agency, Defendants.

No. 79 C 680.

United States District Court,
N. D. Illinois, E. D.

April 21, 1981.

Robert M. Hodge, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Thomas P. Walsh, Asst. U. S. Atty., Chicago, Ill. (Thomas W. Richardson, Office of Legal Counsel FBI, Washington, D.C., of counsel), for defendants.

## MEMORANDUM OPINION

WILL, Senior District Judge.

Plaintiff has filed this action under the Freedom of Information Act to compel the defendant federal agencies to produce documents from their files which relate to him and which they have refused to produce pursuant to his requests and to require the agencies to supply him with the information they have deleted from the documents which they have produced. The plaintiff has made a motion for partial summary judgment as to the information deleted from two documents which the FBI has produced, documents 59 and 60. For the reasons hereinafter stated, we grant plaintiff's motion for summary judgment in part, and deny it in part; we grant summary judgment for defendant in part.

I

Document 59 is a 1963 memorandum from the FBI Chicago office to the Director of the FBI. The memorandum noted that plaintiff had been hired as a consulting psychologist for the Chicago Police Department and that, according to the FBI's files, plaintiff was a member of the Communist

Party. Authority to reveal Abrams' Communist Party membership to a third party was requested. That authority was granted by the Director in document 60. The FBI released documents 59 and 60 to plaintiff; deletions, however, concealed the names of FBI agents, the source or sources for the agency's information about plaintiff, and the identity of the party to whom the FBI revealed its information.

The FBI claims that the deleted information is exempt under section (b)(7) of the FOIA.

> (b) This section does not apply to matters that are—
>
>     \*    \*    \*    \*    \*    \*
>
> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;
>
>     \*    \*    \*    \*    \*    \*
>
> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

5 U.S.C. § 552(b)(7). Specifically, the FBI relies on the personal privacy exemption contained in section (b)(7)(C) and the confidential source exemption contained in section (b)(7)(D).

## II

Courts are divided on the meaning of the phrase "investigatory records compiled for law enforcement purposes" when the agency invoking exemption 7 is the FBI. Neither the FOIA itself nor its legislative history define those terms. Some courts have held that before the FBI can withhold information on the basis of exemption 7, it must prove "that the agency was gathering information with the good faith belief that the subject may violate or has violated federal law [rather than] merely monitoring the subject for purposes unrelated to enforcement of federal law." *Lamont v. Department of Justice*, 475 F.Supp. 761, 773 (S.D.N.Y.1979). *See also Church of Scientology of California v. United States Department of the Army*, 611 F.2d 738, 748 (9th Cir. 1979) ("An agency which has a clear law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between enforcement of a federal law and the document for which exemption is claimed."); *Ramo v. Department of the Navy*, 487 F.Supp. 127, 131 (N.D.Cal.1979) (the FBI must "show a sufficient connection between the conduct of the investigation and legitimate concerns for maintaining national security or preventing criminal activity); *Black v. Sheraton Corporation of America*, 371 F.Supp. 97, 102 (D.D.C.1974) (investigatory file exemption is not applicable if the investigation was not related to a law enforcement proceeding but was conducted for intelligence purposes). Other courts, however, have held that proof of a law enforcement purpose for a particular investigation is not a prerequisite to the application of exemption 7 to FBI documents. *Kuehnert v. FBI*, 620 F.2d 662, 666 (8th Cir. 1980); *Irons v. Bell*, 596 F.2d 468, 476 (1st Cir. 1979).

      We hold, as did the courts in *Kuehnert v. FBI* and *Irons v. Bell*, that all FBI investigatory records are "compiled for law enforcement purposes" regardless of the legality of the particular investigation or the sufficiency of the connection between the investigation and enforcement of a federal law. The exemptions in section (b)(7) represent congressional efforts to accommodate both a democracy's interest in public access to government processes and govern-

ment and individual interests in confidentiality. *See* Senate Debate & Vote, May 30, 1974, *reprinted in Freedom of Information Act and Amendments of 1974* (P.L. 93–592) *Source Book: Legislative History, Texts, and Other Documents* 334 (1975) (remarks of Senator Hart). Application of exemption 7 to all FBI investigatory records maintains that balance with less harm to those conflicting interests than does selective application based on an evaluation of the propriety of a particular investigation.

We reject the latter approach, which attaches legal significance to the apparent lack of law enforcement purpose in an FBI investigation, for several reasons. First, notwithstanding the tests for law enforcement purpose formulated by other courts, no adequate, concrete standards can be articulated to distinguish

> between a colorably justifiable investigation that turned out to be a blind alley and an investigation that was bogus from the beginning. At best, the district court would be forced, on a record grown cold after years or decades, to second or third guess the judgment of a Special Agent in Charge that an investigation was warranted.

*Irons v. Bell*, 596 F.2d at 474. This case illustrates the difficulty of applying tests. The FBI's failure to produce enough evidence to prosecute plaintiff does not necessarily mean that the investigation was not related to the enforcement of the internal security laws. It may mean simply that the investigation was not successful. Evaluating years later the likelihood of enforcement which existed at the start of the investigation is impossible.

Second, if exemption under section (b)(7) depends upon showing a law enforcement purpose, when a court decides that an FBI investigation was illegal or not sufficiently connected to a law enforcement purpose, the related information is disclosed even if, for example, disclosure would be an unwarranted invasion of personal privacy, reveal the identity of a confidential source, or endanger the life of a law enforcement officer. Such disclosure could harm innocent individuals who gave information to the FBI or were otherwise mentioned in FBI records but "had no way to test the legality of an FBI investigation," *Irons v. Bell*, 596 F.2d at 474, could harm law enforcement officers who were acting with a good faith belief that their investigation was connected with a law enforcement purpose, and could harm the FBI's ability to conduct legal investigations since individuals will be reluctant to participate in an FBI investigation lest a judge later find that the investigation was unjustified and order the participation to be made public.

That sacrifice of the congressionally recognized interest in privacy and confidentiality is unnecessary since FBI abuses will be made public through the FOIA under the interpretation which we adopt. Under our holding, although all FBI documents meet the prerequisite for application of exemption 7, all FBI investigatory records are not automatically exempt: the FBI must show that revealing the information will constitute an unwarranted invasion of personal privacy, disclose the identity of a confidential source, or cause any of the four other harms which justify exemption under section (b)(7). Furthermore, only those portions of a document which would result in the specified harm are protected; segregable portions must be disclosed. If these harms are not shown, even though the documents are investigatory records compiled for law enforcement purposes, they will not be exempt from disclosure.

Most of the information about FBI excesses will be revealed under our interpretation of section (b)(7) since most of the exemptions listed in section (b)(7) will not be available to the FBI if their investigation was illegal. Particularly in cases where overreaching is indicated, we will "use special caution to insure that the limited exemptions from exposure are not used to defeat Congressional purpose [to reveal government abuses]." *Irons v. Bell*, 596 F.2d at 476. If there is no proper law enforcement purpose, there would be no enforcement proceedings or trial, and section (b)(7)(A) which exempts information

which would interfere with enforcement proceedings and section (b)(7)(B) which exempts information which would deprive a person of a fair trial could not apply. If the investigation was not a lawful national security intelligence investigation or a criminal investigation with sufficient connection to enforcement, information from a confidential source (as distinguished from the identity of a confidential source) cannot be withheld under section (b)(7)(D). Neither can section (b)(7)(E) be interpreted to exempt disclosure of illegal investigative techniques since Congress could not have intended that those remain concealed. The information which will be exempt will not conceal the questionable character of FBI practices but only prevent unwarranted invasions of personal privacy ((b)(7)(C)), disclosure of confidential sources ((b)(7)(D)), or danger to the safety of a law officer ((b)(7)(F)). The slight increase in public knowledge which would be gained by holding that these exemptions in section (b)(7) do not apply to documents related to unwarranted FBI investigations does not justify the harm to individual and governmental interests which such a holding would entail. Our holding, that all FBI investigatory records are exempt regardless of the legality of the investigation if one of the requisite harms listed in section (b)(7) is shown, reflects a sensitivity to privacy and law enforcement interests while also assuring the disclosure of all but the unnecessary details of FBI abuses.

## III

Although we have held that the FBI does not need to show a law enforcement justification for its investigation of Abrams in order to invoke exemption 7, the FBI does need to show that one of the specific harms listed in section (b)(7)(A)–(F) will result if the information excised from documents 59 and 60 is disclosed.

## A

■ The FBI claims that the deletions of the names of individuals or institutions who provided the agency with information about plaintiff are justified under exemption (7)(D) which protects against the disclosure of the identity of a confidential source. For the identity of the source to be exempt, the information from the source must have been "acquired under an express assurance of confidentiality or in circumstances where such an assurance may reasonably be inferred." *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977). The plaintiff complains that the defendants' affidavits are not sufficient to qualify the sources as confidential sources since the assertions "do no more than track this language: no specific facts are offered to substantiate the claim." A factual showing that those sources were actually given an express or implied assurance of confidentiality is not required, however, because, since this investigation apparently began in the 1940's, "it is questionable, as a practical matter, how the Department could ever make such a showing." *Lamont v. Department of Justice*, 475 F.Supp. 761, 779 (S.D.N.Y.1979). In *Maroscia v. Levi*, the Seventh Circuit upheld the FBI's reliance on section (b)(7)(D) even though the affidavit filed in that case was as general as the one filed in this case, stating only that the " 'sources . . . were expressly or impliedly assured that the information would be received confidentially.' " 569 F.2d at 1002.

■ Furthermore, an assurance of confidentiality can be reasonably inferred from any exchange between a source and the FBI since the agency's " 'investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were revealed.' " *Lamont v. Department of Justice*, 475 F.Supp. at 779, *quoting Kaminer v. NLRB*, 90 L.R.R.M. 2269, 2272 (S.D.Miss.1975). The plaintiff argues that, because the information in this case was given to the FBI twenty-seven years ago, no detriment would be suffered by the sources if their names were revealed at this time. Plaintiff, however, misreads the decisions in *Lamont* and *Kaminer*. In those cases, individual detriment was not a factor which had to be present in a specific

case for the confidential source exemption to apply but a factor to be considered in order to determine if confidentiality was necessary to the particular agency's investigatory function in general, and, therefore, could be presumed in a specific case. Because of the nature of FBI investigations, confidentiality is imperative to prevent embarrassment, harassment, or reprisals to the source. A presumption of confidentiality is therefore justified for FBI sources and in this case.

■ The confidential source exemption applies to local law enforcement agencies as well as to individuals. Nothing in the plain meaning of the word "source" or the legislative history supports a distinction between individual and institutional sources of information. Furthermore, the policy which justifies the exemption for individuals also applies to institutions.

If the enforcement authority could not assure that information furnished by entities such as state and local law enforcement agencies would remain confidential, it would be confronted with the possibility of losing these valuable sources of information—and, as a consequence, the federal agency's investigatory operations would be affected adversely. This is precisely the result that Congress unequivocally sought to avoid.

*Lesar v. United States Department of Justice*, 636 F.2d 472, 491 (D.C.Cir.1980).

The plaintiff argues that the confidential source exemption should not be applied to law enforcement agencies officers if withholding their identities would shield them from civil rights liability for activities performed in bad faith. The bad faith of the law enforcement officers involved in Abrams' case is not as obvious as plaintiff argues. Although the FBI could not have prosecuted Abrams nor the Chicago Police Department refused to hire him simply on the basis of his membership in the Communist Party without proof of his active adherence to its revolutionary tenets, the unconstitutionality of simply compiling information on Communist Party members and exchanging that information with other law enforcement agencies without using it to disadvantage the individual was not established in the 1950's and 1960's even assuming it is clear today. Nothing more than information gathering and dissemination is evident in documents 59 and 60. This case at least illustrates the difficulty of evaluating the good faith of agents and institutions years after the fact. Furthermore, a "good faith" limitation to the exemption is contrary to the congressional intent that the identity of confidential sources be protected "without exception." Senate Debate & Vote, May 30, 1974, *reprinted in FOIA Source Book* 333 (remarks of Senator Hart).

■ The FBI, however, has withheld the identities of individuals or institutions who did not furnish the FBI with information; the FBI furnished them with information. Although the FBI might argue that, as a matter of policy, all of its contacts with other law enforcement personnel or agencies should be exempt, that policy is not reflected in exemption (7)(D) which protects the FBI's confidential sources not the recipients of confidential information from the FBI. The confidential source exemption, therefore, cannot apply to the first deletion on page 2 of document 59 or the first, third and fourth deletions in the body of document 60. Since our *in camera* inspection indicates that the deletions are of institutional names, the personal privacy exemption cannot be relied upon either. We uphold, however, all other deletions in documents 59 and 60 which the agency made pursuant to section (b)(7)(D).

### B

■ The FBI argues that the identity of its agents is exempt because disclosure would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 557(b)(7)(C). "FBI agents do have a privacy interest in the potential disclosure of their names in connection with a FOIA request regarding a particular investigation." *Miller v. Webster*, 483 F.Supp. 883, 887 (N.D.Ill.1979), appeal pending, No. 79–1210 (7th Cir.). *See also Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977). The

agents' privacy interest must be weighed against the public interest which would be served by release of their names. *Id.* The government in this case has failed to show anything more than the "abstract potential" for harassment, annoyance, and interference with future investigations which is present in any case where agents' names may be revealed. *See Miller v. Webster,* 483 F.Supp. at 888. The plaintiff, however, has failed to show any public interest to be served by revealing the names. The public interest in disclosure of FBI abuses is fully vindicated by disclosure of the documents without the names of the FBI agents involved. Even if the public has an interest in plaintiff's bringing a civil rights action, *compare NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975) (the FOIA was not designed to benefit private litigants) *with Miller v. Webster,* 483 F.Supp. at 887 (the vindication of constitutional rights serves the public interest), plaintiff does not have a cause of action against the FBI agents; documents 59 and 60 do not reveal any violations of constitutional rights. Since there is no public interest in disclosure, the privacy interest of the FBI agents is sufficient to require exemption.

### IV

For the reasons stated above, we grant plaintiff's motion for summary judgment as to the first deletion on page 2 of document 59 and the first, third and fourth deletions in the body of document 60. For all other deletions in documents 59 and 60, we deny plaintiff's motion for summary judgment and grant summary judgment for defendant.