Joseph J. **FIUMARA**

v.

Stephen E. **HIGGINS, Acting Director, Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury; Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury.**

Civ. No. 82–403–D.

United States District Court,
D. New Hampshire.

Sept. 30, 1983.

Steven E. Feld, Portsmouth, N.H., for plaintiff.

Robert J. Lynn, Asst. U.S. Atty., Concord, N.H., for defendants.

## OPINION

DEVINE, Chief Judge.

*Introduction*

This action concerns the Freedom of Information Act ("FOIA"). Pursuant to FOIA, plaintiff seeks disclosure of information. The action is before the Court on cross motions for summary judgment. Jurisdiction is founded upon 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

The smoke has not cleared from the fire that occurred on March 1, 1980, at the Drop Anchor Motel in Hampton, New Hampshire. The fire led to an arson investigation conducted by the Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury ("ATF"). Plaintiff, an owner of the motel, was a subject of the investigation. No charges or prosecution resulted from the investigation.

Defendant generated information throughout the investigation. Plaintiff sought this information through defendant's administrative process.[1] By letter dated February 17, 1982, plaintiff filed his initial FOIA request for all documents maintained by ATF regarding plaintiff. ATF located 36 pages determined to be within the scope of the request. By letter dated May 3, 1982, the Chief, ATF Disclosure Branch, disclosed 29 pages with deletions and seven pages in their entirety.

By letter dated May 10, 1982, plaintiff appealed to ATF regarding the withheld information and indicated that he believed additional records about him had not been disclosed. By letter dated June 16, 1982, the Acting Director of ATF upheld the decision of the Chief of ATF's Disclosure Branch with respect to the 29 pages disclosed with deletions. ATF also noted that it had found 54 additional pages, of which twenty-one were disclosed entirely, two pages were disclosed with deletions, and 31 pages were withheld entirely.

Plaintiff instituted this civil action on July 20, 1982. In preparation of defendant's case, the Assistant United States Attorney requested that ATF determine whether additional information concerning plaintiff existed. ATF discovered such additional information in the Post of Duty file in Boston. ATF alleged that because the Concord, New Hampshire, ATF office had been closed, the complete records had been forwarded to ATF in Boston. Apparently during the initial administrative requests, only the main case file was found and sent to ATF headquarters. The work file, i.e., the information found after plaintiff filed his complaint and the United States Attorney's office made its request, yielded 140 pages disclosed to plaintiff entirely, 27

---

1. The parties stipulate that plaintiff has properly exhausted his administrative remedies. The procedural rules of ATF concerning disclosure of agency information to the public appear at 27 C.F.R. § 71 (1981).

pages disclosed to plaintiff with deletions, and 456 pages withheld from plaintiff entirely.

In sum, 713 pages were found by defendant to be within plaintiff's request. Of these, 168 pages were disclosed entirely, 58 pages were disclosed with deletions, and 487 pages were withheld in their entirety.

On May 24, 1983, the Court ordered defendant to file within 30 days a detailed index that would assist the Court in its efforts. The defendant ably complied, and the Court proceeded forthwith.[2]

■ Both parties move for summary judgment. Summary judgment is proper only if, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Early v. Eastern Transfer,* 699 F.2d 552, 554–55 (1st Cir.1983); *Condon v. Local 2944, United Steelworkers of America,* 683 F.2d 590, 594 (1st Cir.1982). A dispute of fact is material if it affects the outcome of the litigation and is genuine if manifested by substantial evidence going beyond the allegations of the complaint. *Pignons S.A. de Mecanique de Precision v. Polaroid Corporation,* 657 F.2d 482, 486 (1st Cir.1981). The moving party bears the burden of showing that there is no genuine issue as to all the material facts necessary to entitle him to judgment. *Donovan v. Agnew,* 712 F.2d 1509 at 1515 (1st Cir.1983). Once the movant has made the required showing, the nonmoving party opposing summary judgment must demonstrate the existence of a genuine issue of material fact. *Id.; White v. Hearst Corporation,* 669 F.2d 14, 17 (1st Cir.1982). Summary judgment should not be granted to an agency if it does not submit proper documentation or if the documents submitted show that there are controverted facts. 15 Fed.Proc., L.Ed. § 38:313 (1983). Summary judgment to a

plaintiff should not be granted unless, upon review of the index, the Court finds that the agency has clearly failed to establish that documents are exempt. *Id.; see also Irons v. Bell,* 596 F.2d 468, 471, n. 6 (1st Cir.1979) (even though burden of establishing applicability of exemption is on agency, it is risky to grant summary judgment when only competent evidence before court is agency's admittedly flawed affidavit).

■ The Court now undertakes a review *de novo.* 5 U.S.C. § 552(a)(4)(B). The ultimate decision regarding the propriety of ATF's denial of access to information rests with the Court; the Court is not limited merely to a determination of whether ATF abused its discretion. *Ray v. Turner,* 587 F.2d 1187, 1190 (D.C.Cir.1978) (per curiam).

■ FOIA is our free society's response to unwarranted suppression of information by government. Congress sought principally to open administrative processes to the scrutiny of the press and general public when it passed FOIA. *Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 17, 94 S.Ct. 1028, 1037, 39 L.Ed.2d 123 (1974). The basic purpose of FOIA reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language. *Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–1599, 48 L.Ed.2d 11 (1976) (*"Rose"*). These exemptions are to be narrowly construed. *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 630, 102 S.Ct. 2054, 2063, 72 L.Ed.2d 376 (1982); *New England Medical Center Hospital v. National Labor Relations Board,* 548 F.2d 377, 384 (1st Cir. 1976). The primary purpose of FOIA, however, is not to serve as a substitute for private litigants' civil or criminal discovery. *See Baldrige v. Shapiro,* 455 U.S. 345, 360 n. 14, 102 S.Ct. 1103, 1112, n. 14, 71 L.Ed.2d 199 (1982); *Giza v. Secretary of Health,*

---

**2.** The Court notes plaintiff's motion of August 9, 1982, for expedient trial, and has kept in mind 5 U.S.C. § 552(a)(4)(D), which states:

Except as to cases the court considers of greater importance, proceedings before the district court, as authorized by this subsec-

tion, and appeals therefrom, take precedence on the docket over all cases and shall be assigned for hearing and trial or for argument at the earliest practicable date and expedited in every way.

*Education and Welfare,* 628 F.2d 748, 751 (1st Cir.1980). FOIA instead clearly gives any member of the public as much right to disclosure as one with a special interest therein. *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Unless the requested material in the possession of a federal agency falls within one of the statutory exemptions, it must be made available on demand to any member of the general public. *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 221, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978).

Defendant withheld information under the following exemptions:

(b) This section does not apply to matters that are—

. . . .

(2) related solely to the internal personnel rules and practices of an agency ["Exemption 2"];

(3) specifically exempted from disclosure by statute (other than section 552b of this title [5 USCS § 552b] ), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld ["Exemption 3"];

. . . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy ["Exemption 6"];

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy ["Exemption 7(C)"], (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source ["Exemption 7(D)"], (E) disclose investigative techniques and procedures ["Exemption 7(E)"], or (F) endanger the life or physical safety of law enforcement personnel ["Exemption 7(F)"]; . . . .

5 U.S.C. § 552. These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of FOIA. *Rose, supra,* 425 U.S. at 361, 96 S.Ct. at 1599.

*Information Previously Released to Unauthorized Third Parties*

■ The Court addresses plaintiff's troubling contention that defendant now seeks to withhold information it previously released to unauthorized third parties. Plaintiff claims that defendant disclosed to third parties information concerning plaintiff's telephone and/or financial records. *See* Deposition of Morris J. Torf, p. 117. Defendant does not respond.

It would be grossly unfair to permit records to be available to unauthorized third parties and at the same time deny access to the FOIA requester. *See Cooper v. Department of Navy of United States,* 594 F.2d 484, 486 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979); *see also Cooper v. Internal Revenue Service,* 450 F.Supp. 752, 754 (D.D.C.1977) (release of evidentiary exhibits to court, thus opening information to public inspection, waives confidentiality exemption). Consequently, justice requires that defendant release to plaintiff all records sought by plaintiff which were compiled by ATF and later released to unauthorized third parties. ATF also may not withhold the identities of individuals or institutions who have been the recipients of allegedly confidential information. *Abrams v. Federal Bureau of Investigation,* 511 F.Supp. 758, 763 (N.D.Ill. 1981).

*Third-Party Waiver of Privacy and Confidentiality*

■ Secondly, prior to any analysis of specific exemptions, the Court turns its attention to plaintiff's proffer of affidavits of numerous persons who purport to waive

any rights of privacy or other legal rights that they may have regarding information provided by them to ATF.[3] Plaintiff argues that the requests of these individuals and institutions that the information provided by them to ATF be made available to plaintiff constitutes their complete legal waiver of confidentiality under FOIA. That is, these affiants allegedly deny ATF their right to assert Exemptions 7(C) and 7(D) over withheld information concerning these affiants.

Exemptions 7(C) and 7(D) serve to ensure and protect the privacy and anonymity of those persons mentioned in a law enforcement investigation. The archetypal case casts the agency as protector of the timid informant's confidentiality. These affiants, however, are not such characters. They have voluntarily surrendered any interests protected under Exemptions 7(C) and 7(D), and, therefore, unless otherwise exempt, ATF must release all such information it withholds since the persons who are protected by these exemptions have waived their rights to privacy and confidentiality. *Diamond v. Federal Bureau of Investigation,* 532 F.Supp. 216, 227 (S.D.N.Y.1981), aff'd 707 F.2d 75, 77 (2d Cir.1983); *Ingle v. Department of Justice,* 698 F.2d 259, 269 (6th Cir.1983); *Miller v. Bell,* 661 F.2d 623, 627, 628 (7th Cir.1981) (per curiam), *cert. denied, Miller v. Webster,* 456 U.S. 960, 102

S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Radowich v. United States Attorney, District of Maryland,* 658 F.2d 957, 960 (4th Cir.1981); *cf. Sears, Roebuck and Co. v. General Services Administration,* 384 F.Supp. 996, 1004 (D.D.C.), *aff'd* 509 F.2d 527 (D.C.Cir.1974) (per curiam); *Nationwide Mutual Insurance Company v. Friedman,* 451 F.Supp. 736, 746 (D.Md.1978) (Exemption 7 gives private parties no interest of their own in nondisclosure). ATF must also release information provided by organizations that now waive any right in nondisclosure, since the policy of disclosure is no less applicable to an organization that waives its FOIA protections. *See Lesar v. United States Department of Justice,* 636 F.2d 472, 491 (D.C.Cir.1980).

### Exemption 2

The Court now turns to those individual exemptions asserted by defendant. Defendant seeks to withhold data processing information, e.g., access codes and identification numbers to the Treasury Enforcement Communication System ("TECS") under Exemption 2.[4] Defendant argues that the information is used solely for internal purposes for which there is no legitimate public interest in disclosure. Defendant seeks to apply Exemption 2 to material in Documents 35, 36, 100, 101, 102–07, 285, 286, 287, 295, and 296.[5]

---

3. The following persons or institutions furnished waivers:

 Lewis W. Brown (1/3/83)
 Ira H. Cook (1/19/83)
 Arthur A. DaPrato (1/25/83)
 Kleonike Doukeris (1/11/83)
 [Illegible] Doukeris (1/11/83)
 Rita A. Drayer (1/10/83)
 The Exeter Banking Company, by Edwin R. Baker (2/11/83) (unsworn letter)
 Steven Eric Feld (1/24/83)
 The First National Bank of Portsmouth, by Norman F.C. Kent (1/21/83)
 Mary G. Fiumara (1/26/83)
 Lawrence Gellers (1/20/83)
 Hampton National Bank, by A.R. Bunker (1/21/83)
 Jane Kelley (1/3/83)
 Forrest A. Lindahl (1/24/83)
 Charlotte K. Marshall (1/26/83)
 Richard Millette (1/7/83)
 Philbert V. Pellegrini (12/28/82)
 Anthony N. Prizio (1/28/83)
 Charles M. Story (1/4/83)

For future reference, the Court points out that these waivers were prepared after the filing of the complaint and that there is no allegation that plaintiff offered such to defendant in the course of his administrative request.

4. Defendant also asserts this exemption in conjunction with Exemption 7(E). Exemption 7(E) was used to protect internal codes that allegedly relate to ATF investigatory techniques. Defendant allegedly deleted computer codes because their release would enable anyone with access to TECS to determine the investigative techniques and procedures of all Treasury Department agencies which utilize the system. The Court's ruling under Exemption 2 makes unnecessary an analysis of these facts under Exemption 7(E).

5. This information is based upon the index ordered by the Court and submitted by defendant.

■ Exemption 2 concerns matters that are related solely to the internal personnel rules and practice of an agency. 5 U.S.C. § 552(b)(2). Exemption 2 pertains to routine matters with merely internal significance in which the public cannot reasonably be expected to have an interest. *Rose, supra,* 425 U.S. at 369–70, 96 S.Ct. at 1603. This exemption exempts internal administrative and clerical markings and identifiers. *E.g., Scherer v. Kelley,* 584 F.2d 170, 175 (7th Cir.1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979) (file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references); *Nix v. United States,* 572 F.2d 998, 1005 (4th Cir.1978) (file numbers, routing stamps, cover letters, and secretary initials); *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977) (per curiam) (file numbers, initials, signatures, mail routing stamps, and references to previous communications utilized to maintain control of an investigation); *Malizia v. United States Department of Justice,* 519 F.Supp. 338, 344–45 (S.D.N.Y. 1981) (informant source's symbolic name or number).

■ The burden of proof is on defendant to sustain its denial of agency records. 5 U.S.C. § 552(a)(4)(B). Defendant must show that its interest in nondisclosure outweighs the public interest in disclosure. *See Rose, supra,* 425 U.S. at 362–67, 96 S.Ct. at 1599–1602. Defendant asserts that release of these internal codes might enable outsiders to circumvent agency functions. Plaintiff has not shown any legitimate public or private interest in disclosure. Accordingly, the Court finds and rules that the defendant has met its burden, and that administrative markings and identifiers are properly exempt under Exemption 2.[6]

*Exemption 3*

Defendant seeks to withhold information under Exemption 3. Exemption 3 exempts from disclosure matters specifically exempted from disclosure by statute. Defendant asserts Exemption 3 in reference to Rule 6(e), Fed.R.Cr.P., which exempts from disclosure matters occurring before the grand jury.[7] Defendant asserts this exemption to protect information obtained pursuant to grand jury subpoenas, and information generated by defendant for the grand jury from these records, e.g., lists that identify from subpoenaed telephone toll records the names and addresses of parties called. Defendant alleges that the exemption protects material that would reveal matters which were of interest to the grand jury and would disclose the nature, scope and direction of the grand jury investigation. Defendants seek to apply Exemption 3 in conjunction with Rule 6(e) to Documents 13–14, 20, and 290 pages of information consisting of grand jury subpoenas and information obtained via those subpoenas. Defendant redacted information from Documents 13–14 and 20, and withheld entirely the other 290 pages. Defendant also with-

---

**6.** Those codes which identify violators may also fall within the bounds of Exemption 7(E). *Nunez v. Drug Enforcement Administration, U.S. Department of Justice,* 497 F.Supp. 209, 211, n. 4 (S.D.N.Y.1980).

**7.** Rule 6 states, in pertinent part:
(e) *Recording and Disclosure of Proceedings.*
....
(2) *General Rule of Secrecy.*—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
(3) *Exceptions.*
....
(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminary to or in connection with a judicial proceeding;
....
If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

held state tax information, Documents 70, 73, 74, and 76, pursuant to Exemption 3. Defendant states, "[b]ased on the information available to the Bureau, we believe the tax information was obtained by the Bureau along with other financial institutions [subpoenaed by the grand jury]. No other source available to the Bureau during this investigation can be identified as the source of such information." Higgins Affidavit ¶ 49. Defendant also withholds the names of financial institutions and information they provided in Documents 70, 76, and 77. Defendant asserts Exemption 3 in conjunction with Rule 6(e), and as private entity confidential sources under Exemption 7(D) to protect the identities of financial institutions and private companies that provide information of investigatory value to ATF.

Plaintiff argues that no material regarding plaintiff was ever presented before the grand jury. Plaintiff alleges that the material was subpoenaed through the grand jury mechanism by the United States Attorney, but that at no time was the material presented before a grand jury and at no time was an indictment brought. Plaintiff refers to Document 32 wherein an ATF report states that

> Druing [sic] the reporting period a meeting was held with Assistant United States Attorney [deleted] and the facts of the investigation were reviewed. [Deleted] reiterated that he was of the opinion that while it was entirely possible that a Grand Jury might hand down a true bill regarding Joseph FIUMARA it was still his belief that he would not be able to avoid a directed verdict of acquittal by the Court.

Defendant alleges that grand jury subpoenas and information obtained by virtue of these subpoenas is exempt from disclosure. Defendant argues that release of this information would reveal the scope and direction of the grand jury's inquiry, and would also reveal what matters were of interest to the grand jury. Defendant does not deny, however, plaintiff's allegation that the withheld information was not "matters occurring before the grand jury".

■ Rule 6(e) is a relevant statute within the meaning of Exemption 3. *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 866–68 (D.C.Cir.1981) (*"Fund"*). FOIA, however, does not affect the traditional rule of grand jury secrecy as codified in Rule 6(e). *Thomas v. United States,* 597 F.2d 656, 657 (8th Cir.1979) (per curiam); *Murphy v. Federal Bureau of Investigation,* 490 F.Supp. 1138, 1141 (D.D.C.1980); *Hiss v. Department of Justice,* 441 F.Supp. 69, 70 (S.D.N.Y.1977). Disclosure is appropriate only when the need for it outweighs the public interest in secrecy; the burden of demonstrating this balance rests upon the private party seeking disclosure. *Douglas Oil Company of California v. Petrol Stops Northwest,* 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979) (*"Douglas Oil"*).

■ A long-established policy, older than our Nation itself, *Pittsburgh Plate Glass Company v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), maintains the secrecy of grand jury proceedings in federal courts, *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958). There are various reasons why proceedings of a federal grand jury are closed and cloaked with secrecy.

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 681–82, n. 6, 78 S.Ct. at 986, n. 6, *quoting United States v. Rose,* 215 F.2d 617,

628–29 (3d Cir.1954). The interests in grand jury secrecy become reduced, although not eliminated, when the grand jury has ended its activities. *Douglas Oil, supra,* 441 U.S. at 222, 99 S.Ct. at 1674. Where considerations justifying secrecy become reduced, a party asserting a need for disclosure will have a lesser burden in showing justification. *Id.* at 223, 99 S.Ct. at 1675.

The hair the Court is asked to split concerns the relationship between grand jury and prosecutor. The Supreme Court has recently spoken on the relationship.

> The purpose of the grand jury requires that it remain free, within constitutional and statutory limits, to operate 'independently of either prosecuting attorney or judge.' *Stirone v. United States,* 361 U.S. 212, 218 [80 S.Ct. 270, 273, 4 L.Ed.2d 252] (1960) (footnote omitted). Nevertheless, a modern grand jury would be much less effective without the assistance of the prosecutor's office and the investigative resources it commands. The prosecutor ordinarily brings matters to the attention of the grand jury and gathers the evidence required for the jury's consideration. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it depends largely on the prosecutor's office to secure the evidence or witnesses it requires.[13] The prosecutor also advises the lay jury on the applicable law. The prosecutor in turn needs to know what transpires before the grand jury in order to perform his own duty properly. If he considers that the law and the admissible evidence will not support a conviction, he can be expected to advise the grand jury not to indict. He must also examine indictments, and the basis for their issuance, to determine whether it is in the interests of justice to proceed with prosecution.

[13] Not only would the prosecutor ordinarily draw up and supervise the execution of subpoenas, but he commands the investigative forces that might be needed to find out what the grand jury wants to know. See also, *e.g.,* 18 U.S.C. § 6993 (United States Attorney to request order granting use immunity).

*United States v. Sells Engineering, Inc.,* —— U.S. ——, 103 S.Ct. 3133, 3141, 77 L.Ed.2d 743 (1983). The issue here faced by the Court, therefore, is whether information gathered under grand jury subpoena by the prosecutor for consideration by the grand jury but not presented to the grand jury is "matters occurring before the grand jury" and thus subject to the rule of secrecy.

Rule 6(e) provides for secrecy of "matters occurring before the grand jury". Plaintiff claims that information gathered via grand jury subpoena but not actually presented to the grand jury is not "matters occurring before the grand jury". Defendant alleges that grand jury subpoenas and information obtained by virtue of these subpoenas is exempt from disclosure. Defendant argues that release of this information would reveal the scope and direction of the grand jury's inquiry, and would also reveal what matters were of interest to the grand jury. Defendant does not deny, however, plaintiff's allegation that the withheld information never reached the grand jury.

The mere fact that a grand jury has subpoenaed information does not forever insulate the matter from release. *Securities and Exchange Commission v. Dresser Industries, Inc.,* 628 F.2d 1368, 1383 (D.C. Cir.) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Also, the mere fact that a document may have been submitted to the grand jury does not mean that a copy of the document cannot be released under FOIA if such a release in no way affects the secrecy of the grand jury proceedings. *Jos. Schlitz Brewing Co. v. Securities and Exchange Commission,* 548 F.Supp. 6, 9 (D.D.C.1982). Thus, release may be appropriate if it fails to elucidate the inner workings of the grand jury. *Murphy v. Federal Bureau of Investigation, supra.*

Plaintiff apparently argues that material was not presented to the grand jury because the prosecution felt that it would not indict and, therefore, release of such material would not reveal matters occurring before the grand jury. The argu-

ment has some initial appeal. The "line of grand jury secrecy" is drawn at the door of the grand jury room, and does not apply outside of the grand jury room. *Clavir v. United States,* 84 F.R.D. 612, 614 (S.D.N.Y. 1979). Rule 6(e) is intended to protect against disclosure of what is said or what takes place in the grand jury room. *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960). "[R]eading Rule 6(e) to cover government investigation that may lead to a grand jury probe would raise a host of questions about the scope of such secrecy, questions which Rule 6(e) does not purport to answer. . . . rule 6 does not apply to statements made before grand jury testimony is given." *In re Search Warrant for Second Floor Bedroom,* 489 F.Supp. 207, 211 (D.R.I.1980). In these cases, however, the material sought had not been gathered for purposes of a grand jury investigation. Here, the information sought was gathered under grand jury subpoenas which are held to constitute matters occurring before the grand jury. *Annot.,* 50 A.L.R. Fed. 675 (1980). The subpoenas and information gathered therefrom are too grand-jury related to be distinguished from matters actually presented to the grand jury. *See In re Special February, 1975 Grand Jury,* 662 F.2d 1232, 1237–38 (7th Cir.1981), *aff'd sub nom., United States v. Baggot,* —— U.S. ——, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). Accordingly, the information sought is "matters occurring before the grand jury" and subject to secrecy.

█ Plaintiff also argues that his purpose in obtaining grand jury information which allegedly concerns wrongful government conduct is for use in a potential civil action.[8] At the outset the Court notes that discovery for litigation purposes is not an expressly indicated purpose of FOIA. *Renegotiation Board v. Bannercraft Clothing Co., Inc., supra,* 415 U.S. at 24, 94 S.Ct. at

1040. A party's need for information in connection with litigation gives it no greater rights than that shared by the average member of the public. *National Labor Relations Board v. Sears, Roebuck & Co., supra,* 421 U.S. at 143, n. 10, 95 S.Ct. at 1513, n. 10 (1975). The disclosure provisions of FOIA are not a substitute for discovery. *Columbia Packing Company, Inc. v. United States Department of Agriculture,* 563 F.2d 495 (1st Cir.1977).

█ On its face, Rule 6(e)(3)(C)(i), Fed. R.Civ.P., is "an affirmative limitation on the availability of court-ordered disclosure of grand jury materials". *United States v. Baggot, supra,* 103 S.Ct. at 3167. Thereunder, two independent prerequisites must exist before the Court may order disclosure of grand jury materials: (1) the movant must show particularized need for access thereto, and (2) the need so demonstrated must fairly relate to some identifiable litigation, pending or anticipated. *Id.* Otherwise stated, the actual use to be made of the grand jury materials must have as its primary purpose the preparation or conduct of a judicial proceeding. *Id.*

█ Plaintiff states that "[i]n this instant case, the Plaintiff has an independent purpose in obtaining information about wrongful Government conduct for a potential civil action for damages". Plaintiff's Memorandum, p. 7. Plaintiff must first show a particularized need for access to grand jury information.

The particularized need test requires that the materials sought be 'needed to avoid a possible injustice in another judicial proceeding' and that the moving party's request be 'structured to cover only material so needed.' *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) (footnote omitted). See generally

---

**8.** On July 20, 1982, plaintiff filed this FOIA action. Plaintiff then filed a civil damage action in this court on February 25, 1983. *Fiumara v. Fireman's Fund Insurance Companies,* Civil No. 83–102–L. On August 31, 1983, Judge Loughlin granted summary judgment in favor of defendant. The Court's Order noted

that the same case had been tried in Rockingham County (New Hampshire) Superior Court under heading of *Fiumara v. Dorchester Mutual Fire Insurance Company,* Nos. E–322–81, E–417–81. Plaintiff has appealed Judge Loughlin's Order to the First Circuit.

*id.,* at 221–224, 99 S.Ct. at 1674–1676; *United States v. Sells Engineering, Inc.* [—— U.S. ——] *ante,* at ——, 103 S.Ct. [3133] at 3147–3149 [77 L.Ed.2d 743 (1983)]. These inquiries cannot even be made without consideration of the particulars of the judicial proceeding with respect to which disclosure is sought. See also the proposed new Rule 6(e)(3)(E), —— U.S. ——, 103 S.Ct. ——, 75 L.Ed.2d ——, to take effect August 1, 1983.

*United States v. Baggot, supra,* 103 S.Ct. at 3167, n. 4. The showing of a particularized need usually arises when a litigant seeks to use a grand jury transcript at trial to impeach a witness, to refresh a witness's recollection, to test a witness's credibility, and the like. *United States v. Procter & Gamble Co., supra,* 356 U.S. at 683, 78 S.Ct. at 986. Plaintiff obviously fails to make this requisite showing of particularized need and therefore is not entitled to release of grand jury information.

*Exemption 6*

■ Defendant seeks to assert Exemption 6 over Documents 100–01, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, and 297–306. Exemption 6 authorizes withholding personnel and medical and similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy. 5 U.S.C. § 552(b)(6). Defendant withholds criminal history compilations, i.e., "rap sheets", under this exemption.

Criminal history compilations arguably fall within the realm of "similar" files. A document is part of a "similar" file if its disclosure implicates privacy interests similar to the interests implicated by the disclosure of personnel or medical files. This Exemption is meant to protect substantial privacy interests that touch on intimate details of a person's life, and the 'similar' files language must be interpreted broadly to include a wide range of information of a personal quality.

*Holy Spirit Association for the Unification of World Christianity, Inc. v. United States Department of State,* 526 F.Supp. 1022,

1032 (S.D.N.Y.1981). Records that list instances when an individual has been arrested and charged, regardless of whether the arrests and charges resulted in a conviction, are *sometimes* exempted under Exemption 6. *E.g., Malizia v. United States Department of Justice, supra,* 519 F.Supp. at 346–47; *Malloy v. United States Department of Justice,* 457 F.Supp. 543, 545 (D.D.C.1978). In *Kurzon v. Department of Health and Human Services,* 649 F.2d 65 (1st Cir.1981), however, the Court made reference to *Ferri v. Bell,* 645 F.2d 1213 (3d Cir.1981), and declined to apply Exemption 6 to "rap sheets". Instead, following *Ferri v. Bell, supra,* the Court applied Exemption 7(C), *infra.* This Court shall do the same.

*Exemption 7*

■ Defendant asserts Exemptions 7(C), 7(D), 7(E), and 7(F). These exemptions protect from disclosure investigatory records compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). The language of Exemption 7 prescribes a two-part test for withholding information. First, a requested document must be shown to have been an investigatory record "compiled for law enforcement purposes", and, if compiled for such purposes, the agency must then demonstrate that release of the material would satisfy the requirements of one of the six subparts of Exemption 7. *Federal Bureau of Investigation v. Abramson, supra,* 456 U.S. at 627, 102 S.Ct. at 2062.

ATF must demonstrate that it had a law enforcement purpose in mind when it compiled the information. *Church of Scientology of California v. United States Department of the Army,* 611 F.2d 738, 748 (9th Cir.1979). Defendant argues that the records involved in this FOIA request relate to an ATF investigation of a fire. Furthermore, defendant alleges that

> ATF's involvement in this investigation was based on Title II (National Firearms Act) of the Gun Control Act of 1968, and on the Federal explosives law, Title XI of the Organized Crime Control Act of 1970.

Higgins Affidavit ¶ 19. These circumstances support a finding that the withheld in-

formation was compiled for law enforcement purposes. *See Irons v. Bell, supra,* 596 F.2d at 475 (presumption that records of agency whose function is almost entirely limited to the enforcement of federal law are inherently records for law enforcement purposes within the meaning of Exemption 7). The remaining issue, therefore, is whether the withheld information is exempt under any of the subparts of Exemption 7.

■ Defendant asserts Exemption 7(F) to withhold the identities of law enforcement personnel to protect the life and physical safety of those persons. Defendant asserts Exemption 7(F) to withhold the names and other identifying data of law enforcement personnel. Exemption 7(F) provides for the withholding of investigatory records to the extent that their release endangers the safety of law enforcement personnel. *Nunez v. Drug Enforcement Administration, United States Department of Justice, supra,* 497 F.Supp. 209. Deletion of names and information that might lead to the identity of such law enforcement personnel may be appropriate. *Shaver v. Bell,* 433 F.Supp. 438, 441 (N.D.Ga.1977). Defendant asserts that by the nature of the statutes under which ATF became involved in the case, i.e., The Gun Control Act of 1968 and The Organized Crime Control Act of 1979, any investigation pursuant to such statutes relates to violent conduct. Defendant's assertion, however, asks too much. The Court will not assume that the safety of law enforcement personnel who are involved in such investigations is endangered *per se.* Defendant must make a more compelling showing that disclosure would endanger the safety of law enforcement personnel. *See Ferguson v. Kelley,* 448 F.Supp. 919, 923 (N.D.Ill.1977) (exemption from disclosure under Exemption 7 will be allowed only after a showing of danger to law enforcement agent), *on motion for reconsideration,* 455 F.Supp. 324, 328 (N.D. Ill.1978) (proper analysis under Exemption 7 balances public interest in disclosure against privacy invasion involved).

■ Under Exemption 7(C) defendant seeks to protect from disclosure the identity of ATF agents and other ATF personnel, e.g., attorneys, secretaries, and scientific and technical experts, who were involved in the investigation; the identities of other federal government employees, e.g., Assistant United States Attorneys and non-ATF law enforcement personnel who participated, either directly or indirectly, in the investigation; and the identities of cooperating nonfederal law enforcement personnel. who either provided information for ATF investigations or who are identified in such information. Defendant seeks to protect these persons from potential invasion of privacy, harassment, or physical harm.

Defendant appropriately asserts Exemption 7(C) over the identity of law enforcement and other government personnel involved in the investigation.[9] Defendant argues that disclosure of the names and other identifiers, e.g., Social Security numbers of law enforcement and other government personnel, e.g., the Assistant United States Attorney, can lead to their harassment and unwarranted invasion of their privacy. Plaintiff asserts no particular public or private interest in this information. Thus, in balancing the interests in disclosure against the privacy interests of the individuals named, the Court finds and rules that defendant properly invoked Exemption 7(C) over this information. *Stein v. Department of Justice and Federal Bureau of Investigation,* 662 F.2d 1245, 1260 (7th Cir.1981); *Fund, supra,* 656 F.2d at 864–65; *Baez v. United States Department of Justice,* 647 F.2d 1328, 1338–39 (D.C.Cir.1980); *Lesar v. United States Department of Justice, supra,* 636 F.2d at 487–88; *Nix v. United States, supra,* 572 F.2d at 1005–06; *Pacheco v. Federal Bureau of Investigation,* 470 F.Supp. 1091, 1099 (D.P.R.1979).

Defendant next seeks to withhold under Exemption 7(C) records which might reveal

---

**9.** The Court finds inapt defendant's argument that Exemption 7(E) applies to these proceedings.

the identities of third persons who were of some investigative interest to law enforcement agencies. Defendant withholds records such as TECS printouts and Reports of Investigation concerning third persons under this exemption. Defendant claims that release of such information might subject the parties to unnecessary public attention, harassment, embarrassment, or criticism, and as an unwarranted invasion of privacy is exempt under Exemption 7(C). Plaintiff makes no specific objection.

▆▆▆ Exemption 7(C) is very broad in scope in that it protects anyone where privacy might be invaded as a result of disclosure of information that could possibly reveal their identities. *Pacheco v. Federal Bureau of Investigation, supra,* 470 F.Supp. at 1098. In deciding whether to invoke the exception, the Court applies a balancing test between an individual's right of privacy and the preservation of the public's right to government information. *Id.* Information in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption under 7(C). *Fund, supra,* 656 F.2d at 863. Having determined that this information falls within the threshold requirements of Exemption 7(C), and having discerned neither the plaintiff's nor the public's interest in disclosure, the Court finds and rules that Exemption 7(C) applies to withhold the identities of those third parties investigated for possible criminal activities, even though not subsequently charged or indicted.

Pursuant to Exemption 7(C), and in conjunction with Exemption 7(D), defendant seeks to withhold the identities of third persons interviewed by ATF or who provided information to ATF.[10] Plaintiff specifically complains that in ¶ 61 of the Higgins Affidavit the documents referred to are already in the public domain and are therefore nonexempt. Plaintiff's Memorandum of Law, p. 3. Paragraph 61 refers to pages 307 through 329, articles of organization,

articles of amendment, and annual reports of condition. These records were withheld in total. Defendant alleges that while these documents are a matter of public record, the disclosure of these records as being of interest to a federal law enforcement agency in the context of a particular investigation would constitute an unwarranted invasion of the personal privacy of the individuals named in these records. ¶ 61. Defendant argues that the Court should focus upon the privacy interest of the persons named in the records which have been placed in a criminal investigation file, regardless of the public nature of the record.

▆▆▆ Defendant seeks to withhold the identities of third parties under Exemption 7(C). Exemption 7(C) is broader in scope then Exemption 7(D) (which relates solely to information obtained from a confidential source) in that Exemption 7(C) protects not only confidential sources, but also anyone whose privacy might be invaded and who therefore might be endangered. *See Shaver v. Bell,* 433 F.Supp. 438, 440 (N.D.Ga. 1977). Exemption 7(C) does not prohibit all disclosures which invade personal privacy, but only disclosures which entail an unwarranted invasion of personal privacy, i.e., disclosures which would cause embarrassment or harassment because of sensitive derogatory or intimate personal information. *Lame v. United States Department of Justice,* 654 F.2d 917, 922–23 (3d Cir.1981). The mere mention of a name within the records of a criminal investigation file, however, is not enough for defendant to rely upon. *Id.* at 923, n. 6; *Common Cause v. National Archives and Records Service,* 628 F.2d 179, 184 (D.C.Cir.1980).

▆▆▆ The Court applies the now-familiar *de novo* balancing test, weighing the privacy interest and the extent of the invasion thereof against the public interest in disclosure, tilting the balance toward disclosure. *Common Cause v. Ruff,* 467 F.Supp. 941, 942 (D.D.C.1979). Neither plaintiff nor de-

---

**10.** Of course, these exemptions do not apply to those persons and institutions who have waived their right of privacy and confidentiality, *supra.*

fendant argues persuasively on the issue of identities of third parties. The Court tilts the balance toward disclosure and finds and rules, therefore, that Exemption 7(C) is not properly applied to withhold the identities of persons merely mentioned in passing in ATF files.

■ Defendant earlier sought to withhold criminal histories pursuant to Exemption 6, and the Court ruled that Exemption 7(C) was more applicable. The Court again applies a *de novo* balancing test, weighing the privacy interest and the extent to which such interest is invaded against the public or private benefit that would result from disclosure. Defendant seeks to protect the privacy interests of the named individuals. Plaintiff does not allege any benefits to be reaped by disclosure of these "rap sheets". The Court finds, therefore, that even though an arrested person may have no *constitutional* right of privacy regarding his arrest, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), absent a countervailing public or private interest in disclosure, Exemption 7(C) protects the privacy interests of individuals mentioned in these arrest records. Such interests are here not expressed, and the exemption is properly invoked.

Defendant argues that Exemption 7(D) applies because these persons interviewed by law enforcement personnel assumed that information they furnished would be held by ATF in confidence. Plaintiff, citing *Poss v. National Labor Relations Board*, 565 F.2d 654 (10th Cir.1977),[11] argues that information provided by noninformants is not exempt, and that the parties here interviewed were not guaranteed confidentiality.

■ Exemption 7(D) applies to a "confidential source".

This definition of 'confidential source,' as stated in the Joint Conference Report and in *Keeney* is substantially the same as we announced earlier in *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1138

(4th Cir.1977), where we held that to establish 'the confidentiality of the source,' which is, according to *Lesar v. United States Dept. of Justice*, 636 F.2d 472 (D.C. Cir.1980), the condition placed on the applicability of the exemption, it is only necessary to show that the information was given under an express assurance of confidentiality or in circumstances where such an assurance could reasonably be inferred. *See also Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977).

*Radowich v. United States Attorney, District of Maryland, supra*, 658 F.2d at 960. The policy of Exemption 7(D) is to preclude absolutely the disclosure of the informer's identity. The Court does not balance the defendant's and informants' interests in nondisclosure against public or private interests in disclosure. *Sands v. Murphy*, 633 F.2d 968, 971 (1st Cir.1980).

■ Although defendant has not, for example, supplied to the Court affidavits which show that the information withheld was imparted by sources to it on the basis of a clearly implied, if not an express, assurance of confidentiality, *see Sands v. Murphy, supra*, for these purposes, unless there is evidence to the contrary in the record, promises of confidentiality are implicit in a federal law enforcement agent's interviews that are conducted pursuant to a criminal investigation, *see Ingle v. Department of Justice, supra*, 698 F.2d at 269; *Irons v. Bell, supra*, 596 F.2d at 474–76; *Miller v. Bell, supra*, 661 F.2d at 627; *see also Sands v. Murphy, supra*, 633 F.2d at 970 (FOIA protects without qualification every "confidential source" and does not draw a distinction between a direct and an indirect "confidential source"). There being no evidence in the record that contravenes an implied promise of confidentiality, defendant may under Exemption 7(D) exempt those records gathered by its law enforcement agents that would identify later individuals who provided information to the

---

**11.** For a discussion of this case, *see Alirez v. National Labor Relations Board*, 676 F.2d 423, 426 (10th Cir.1982).

agency and who did not waive confidentiality.

Defendant also contends that Exemption 7(D) enables it to withhold information received from state and local law enforcement and public safety agencies. ATF argues that there is a traditional understanding of confidentiality among law enforcement organizations, and that release of information given under some implied, if not express, confidentiality peculiar to law enforcement would greatly diminish cooperation between ATF and these agencies. Plaintiff ·cites to *Ferguson v. Kelley, supra,* 448 F.Supp. at 925, for the proposition that confidentiality does not extend to entities such as corporations, credit bureaus, or other organizations, including law enforcement agencies. Plaintiff's Memorandum of Law, p. 5.

The general consensus among the federal courts is that the term "confidential source" as used in Exemption 7(D) includes organizations. *Annot.,* 59 A.L.R.Fed. 550, 555 (1982). Moreover, *Ferguson v. Kelley, supra,* disapproved by *Keeney v. Federal Bureau of Investigation,* 630 F.2d 114, 116–17 (2d Cir.1980), does not reflect the current view of the Court which now holds that the term "confidential source" applies to local law enforcement agencies as well as to individuals. *Abrams v. Federal Bureau of Investigation, supra,* 511 F.Supp. at 763. The Court holds, therefore, that Exemption 7(D) properly applies to material supplied to defendant by other law enforcement agencies. *Pacheco v. Federal Bureau of Investigation, supra,* 470 F.Supp. at 1104; *Varona Pacheco v. Federal Bureau of Investigation,* 456 F.Supp. 1024, 1032 (D.P.R.1978).

*Other Claims*

Plaintiff refers to ¶ 49 of the Higgins Affidavit. Plaintiff argues that the withheld tax information referred to in ¶ 49 is personal to plaintiff, does not disclose investigative techniques, and does not relate to confidential sources. Defendant supposes that it garnered this information via grand jury subpoena. In light of the Court's decision to uphold defendant's use of Exemption 3, plaintiff is not entitled to the tax

information deleted from Documents 70, 73, 74, and 76. Other withheld information from Documents 70 through 78 is also properly withheld pursuant to Exemption 7.

Plaintiff alleges that in ¶ 58 of the Higgins Affidavit, withheld information was not provided by a confidential source and may not have been submitted with any expectation of confidentiality. Plaintiff's Memorandum of Law, p. 3. Paragraph 58 of defendant's affidavit refers to pages 266 through 276. These records—a letter, a transmittal notice, property loss notices, an endorsement declaration, financial accounting information, and diagrams—were withheld pursuant to Exemption 7(D) as information received from confidential sources. After *in camera* inspection of these documents, the Court must agree with defendant that disclosure of these documents was received from confidential sources, and that release of these documents would enable a knowledgeable person to identify the confidential source.

*Attorney's Fees and Costs*

 Plaintiff seeks an award of attorney's fees under 5 U.S.C. ¶ 552(a)(4)(E), which provides:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

A motion for fees and costs requires that plaintiff show he is eligible for such an award and is entitled to such. *Fund, supra,* 656 F.2d at 870. Eligibility is established by a determination that the plaintiff has substantially prevailed within the meaning of 5 U.S.C. § 552(a)(4)(E). *Id.*

The Court briefly reviews the circumstances of this case. Plaintiff filed an FOIA request with defendant. Defendant found 36 pages and released 29 pages with deletions and 7 pages entirely. Plaintiff appealed to defendant and suggested that defendant held additional records. Defendant found an additional 54 pages of records. Twenty-one pages were disclosed entirely, 2 pages with deletions, and 31 pages were withheld entirely. Plaintiff then filed suit.

In its preparation of the case, the United States Attorney requested that defendant gather all its records pertaining to plaintiff. To its supposed surprise, defendant found that due to the closing of its New Hampshire office, the work file had been sent to its Boston office, where 623 pages were found. Of these, 140 pages were disclosed entirely, 27 pages were disclosed with deletions, and 456 pages were withheld entirely.

■ In ruling upon a request for costs and fees under FOIA, the Court must first determine whether plaintiff has in fact "substantially prevailed". This determination is guided by the particular circumstances of each case. To substantially prevail, there must be a showing that the suit was necessary and that it had a causative effect on the disclosure of the requested information. *Crooker v. United States Department of Justice,* 632 F.2d 916, 924 (1st Cir.1980). A court order compelling disclosure is not a necessary prerequisite to an award of fees. *Fund for Constitutional Government, supra,* 656 F.2d at 871. Rather, the Court must determine if the prosecution of the action could reasonably be regarded as necessary to obtain the information, and that a causal nexus exists between the action and the agency's surrender of the information. *Id.*

■ The mere fact that requested documents were not released until after the suit was instituted, *without more,* is not enough to establish that a complainant has substantially prevailed. *Cazalas v. United States Department of Justice,* 660 F.2d 612, 619 (5th Cir.1981) (emphasis added). That is, the complainant who receives information after suit is filed must assert something more than just *post hoc, ergo propter hoc. Cox v. United States Department of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979) (per curiam), *citing Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 514 (2d Cir.1976) (*"VLIAC"*).

■ Of the 713 pages of information the Court has before it, the defendant failed to produce or allegedly discover until after the plaintiff filed his complaint 623 pages of information. Defendant explains:

6. On August 2, 1982, my office received a copy of the Summons and Complaint in this civil action.

7. As a part of preparing the Government's defense in this civil action, the Assistant United States Attorney requested that the Bureau determine whether additional records existed. Subsequently, it was determined that additional records were contained in the Post of Duty file. Since the Concord (NH) Post of Duty is closed, the complete records were sent to an ATF Criminal Enforcement Office in Boston. At the time of the initial request and the administrative appeal, the Boston office was requested to send the relevant records to Headquarters for review. Apparently, only the main case file was forwarded and the work files accompanying the main file was [sic] not sent along. Records from the work files were reviewed and disclosed, in part, contemporaneously with the execution of this Affidavit to Mr. Fiumara, through his attorney. Of the work file records, 140 pages were disclosed without deletions, 27 pages were disclosed with deletions and 456 pages were withheld in their entirety.

In summary, a total of 713 pages were determined to be within Mr. Fiumara's request. Of these pages, 168 pages were disclosed without deletions, 58 pages were disclosed with deletions, and 487 pages were withheld in their entirety.

Higgins Affidavit, p. 3.

Defendant argues that the Government by its own motion initiated the action, i.e., preparation for this civil action, which resulted in the discovery and disclosure of additional records; and, that plaintiff in his complaint, unlike in his administrative appeal letter, made no averments as to the existence of additional records.

Had defendant discovered additional records in its continued effort to fulfill plaintiff's FOIA request, even after plaintiff's initiation of a civil action, plaintiff might not have substantially prevailed. *VLIAC,*

supra, 546 F.2d at 513. Defendant cannot argue, however, that because its actions in preparation for trial revealed more information, plaintiff has not prevailed. Furthermore, defendant cannot suggest that plaintiff's argument that he substantially prevailed is somehow lessened because plaintiff did not state in his complaint that he believed defendant held these additional records. Defendant did not even begin to locate the bulk of information requested by plaintiff until defendant prepared for trial. The Court finds ample authority to support its decision that in this case plaintiff has substantially prevailed. *Crooker v. United States Department of Justice, supra,* 632 F.2d at 918–19; *Crooker v. United States Department of Treasury,* 663 F.2d 140, 141–42 (D.C.Cir.1980) (per curiam); *Fund, supra,* 656 F.2d at 872; *Church of Scientology v. Harris,* 653 F.2d 584, 589–90 (D.C.Cir.1981); *see also Perry v. Block,* 684 F.2d 121, 125 (D.C.Cir.1982) (per curiam); *Goland v. Central Intelligence Agency,* 607 F.2d 339, 374 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

Having determined that plaintiff substantially prevailed, the Court now

> must consider whether the suit was of the type that advanced the policy considerations of the Act, which include: 'the benefit to the public deriving from the case, the commercial benefit to the complainant and the nature of his interest in the Federal records sought, and whether the Government's withholding of the records sought had a "reasonable basis in the law."' *See* Conf.Rep. No. 1200, *supra.* *See also Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 712–13 (D.C.Cir.1977). If it is satisfied that these and any other relevant factors are met, the court will then consider the amount of the award, whether it be at- torney fees, costs or both.

*Education/Instruccion, Inc. v. United States Department of Housing and Urban Development,* 649 F.2d 4, 7 (1st Cir.1981),

*quoting Crooker v. United States Department of Justice, supra,* 632 F.2d at 922.

> Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.
>
> Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus [sic] but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.
>
> Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do, so if his interest was of a frivolous or purely commercial nature.
>
> Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester.

*Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 712 (D.C.Cir.1977).

Plaintiff argues that he is entitled to attorney's fees. He feels an award is especially appropriate in view of the United States Attorney General's Memorandum issued May 4, 1981,[12] which states that the Justice Department's current policy is to defend all suits challenging an agency's decision to deny an FOIA request unless the agency's denial lacks a substantial legal basis or defense of a denial presents an un-

---

**12.** Plaintiff's Memorandum of Law, Attachment, *citing* Bouchard, et al, *Guidebook to the*

*Freedom of Information and Privacy Acts,* New York, 1980, 1982 Supp. at 66–67.

warranted risk of adverse impact on other agencies' ability to protect important records. This is not a criterion to award fees. The Attorney General's policy concerns only the relationship between the Justice Department and federal agencies, and is not at all probative of defendant's decision to withhold information. No fees are awardable under this theory.

■ Plaintiff also claims that he has a significant personal interest in disclosure inasmuch as these records are highly personal in nature. A court is more likely, however, to grant attorney's fees in a case which benefits the general public, and is less likely to award fees if disclosure will only further a private interest. 15 Fed. Proc., L.Ed. § 38:326 (1983). Moreover, plaintiff will not be awarded fees where he brings suit to supplement the discovery procedure of a civil action, *Nix v. United States, supra,* 572 F.2d at 1007. Plaintiff is not entitled to attorney's fees under this theory.

Finally, however, plaintiff argues that the Government apparently acted in bad faith in withholding documents in an effort to hide the fact that they had investigated the wrong man and had wrongfully disclosed information to private parties. Plaintiff states that the public interest has been served by making available information concerning possible Government misconduct. The Court finds that defendant had a reasonable, i.e., colorable, basis in law for asserting most of its exemptions. *See, e.g., La Salle Extension University v. Federal Trade Commission,* 627 F.2d 481 (D.C. Cir.1980) (per curiam). The Court finds, however, that with respect to information released by defendant to unauthorized third parties, plaintiff has rendered substantial service to both the Government by bringing it into compliance with the FOIA, and to the public at large by securing for it the benefits assumed to flow from public disclosure of government information, *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1367 (D.C.Cir. 1977), and that defendant did not have a reasonable basis in law to assert exemptions over any information defendant provided to unauthorized third parties. Accordingly, the Court will entertain an award of fees and costs to plaintiff.

Defendant is hereby ordered to release forthwith the following information:

1. Any and all information withheld from plaintiff but previously released by defendant to unauthorized third parties.

2. Any and all information withheld from plaintiff to protect the privacy and confidentiality of persons who now waive such protection.

3. The identities of persons merely mentioned in passing on pages 307 through 329 withheld from plaintiff pursuant to Exemption 7(C).

Plaintiff shall within thirty (30) days submit to this Court records regarding any award of fees and costs.

Accordingly, plaintiff's motion for summary judgment is denied in part and granted in part, and defendant's motion for summary judgment is denied in part and granted in part.

SO ORDERED.